## East Texas Fire Insurance Company v. B. Perkey.

### No. 430.—Decided May 25, 1896.

**1. Insurance—Extension—Assent to Contract.**

Failure of the general agents of an insurance company to reply to a proposition from the maker of a premium note—the non-payment of which forfeited his rights under a contract of insurance—for an extension of time, was not equivalent to an assent to such proposition; and though from all the circumstances there was sufficient evidence of such assent to go to the jury, it was error for the court to charge in effect that the insurer's silence was an assent. (P. 608.)

**2. Same—Charge—Burden of Proof.**

Such error in the charge was not cured by the negative qualification that, if the defendant's general agents did not have notice and did not consent to the extension, defendant was not liable. The burden was on plaintiff to show consent to the extension. (P. 609.)

**3. Same—Estoppel.**

Such failure to reply could not be treated by the court as an estoppel in law. Silence estops a party only where, under the circumstances, it is his duty to speak and there was neither legal nor moral obligation to reply to the proposition, unless the circumstances attending and preceding authorized plaintiff to rely upon silence as an aceptance. The sufficiency of the circumstances should have been left to the jury. (Pp. 609-610.)

ERROR to the Court of Civil Appeals for the Fifth District, in an appeal from Johnson County.

The suit was brought by Perkey to recover from the insurance company a loss by fire under their policy. Plaintiff had judgment in the trial court, which was affirmed on appeal.

*Leake, Henry* and *Reeves*, for plaintiff in error.—An insurer is not

estopped from relying on a stipulation in the insurance contract relieving it of liability for a loss occurring subsequent to the maturity of a
note given by assured for the premium and while it remains unpaid, by
its failure to answer a letter written to it soon after the maturity of said
note by one to whom it had been sent for collection, in which letter insurer was informed that insured could not pay the note, and that he desired an extension until fall for its payment.  Nor could assured, at
whose request the letter was written, claim that he was misled by such
failure, and induced not to pay said note, when he did not know until
after the loss whether or not any answer had been received by the writer
of said letter, nor whether or not any letter had ever been written.
Timon v. Whitehead, 58 Texas, 295;  Burleson v. Burleson, 28 Texas,
415; Pomeroy, Eq. Jur., Vol. 1, sec. 805; May on Insurance, Vol. 2, sec.
497;  Ins. Co. v. Johnson, 23 Pa. St., 72;  More v. Ins. Co., 130 N. Y.,
537 (29 N. E., 757);  Ins. Co. v. Beaty, 119 Pa. St., 6 (12 Atl. Rep., 607);
Hambleton v. Ins. Co., 6 Bissell, 95.

A charge of the court to the effect that a designated act of a party
sought to be estopped would amount to an estoppel, is a charge on the
weight of the evidence, unless such effect is attached to such act by law.

*Henry & Green,* for defendant in error.—Under the facts of this case,
Chapman being the agent of the company to collect the note, any act of
his within the scope of his authority was binding on the company, and
if they knew or might have known by the exercise of reasonable diligence, that he was leading Perkey to believe that he was in no danger of
forfeiting his policy until he notified him of the danger the company
would be bound by Chapman's acts, and the jury would be warranted in
finding that the company had notice of the acts of Chapman.   Kingsly
v. Fitts, 51 Vt., 416; Mining Co. v. Mining Co., Am. St. Rep., 238.

A waiver of forfeiture in an insurance policy, though in the nature of
an estoppel, may be created by acts, conduct or declarations insufficient
to create a technical estoppel, and the courts not favoring forfeitures
are inclined to grasp any circumstances which indicate an election to
waive a forfeiture.   Ins. Co. v. Griffin & Shook, 59 Texas, 513;  Ins. Co.
v. Perkey, 24 S. W. Rep., 1083; May on Insurance, 360 and 370;  Burton v. Ins. Co., 25 Conn., 542;  Morey v. Ins. Co., 9 R. I., 346;  Rockwall
v. Ins. Co., 20 Wis., 335.

The charge of the court was not on the weight of evidence.  Whether
certain facts would constitute an estoppel is a question of law, whether
the facts exist for the jury.   The facts indicated by the court in the
charge complained of, if found true by the jury, would constitute an
estoppel.   Jacobs Bernheim & Co. v. Hawkins, 63 Texas, 1; Anderson v.
Anderson, 23 Texas, 641; Jordan v. Imthuru, 51 Texas, 289; Briscoe v.
Bronaugh, 1 Texas, 340; Ables v. Donley, 8 Texas, 331.

BROWN, ASSOCIATE JUSTICE.—The following conclusions of fact
were filed by the Court of Civil Appeals:

"On May 19, 1888, the East Texas Fire Insurance Company, appellant, issued an insurance policy in favor of B. Perkey, appellee, running three years, in the sum of $3600, on a house and certain furniture therein situated belonging to said appellee, which was burned August 3, 1889. The premium to be paid for such policy was $90, for which appellee executed his two notes, one due October 1, 1888, and one due May 1, 1889.

"The policy contained the following clause: 'If the premium of this policy, or any renewal thereof, be not actually paid, or if a draft or note be taken and received in payment of all or any part of said premium, and the same be not paid at the maturity thereof, then this policy shall cease to be of any force or effect from the date of the maturity of said note or draft, and the assured shall be liable on said note or draft for the time this policy was in force at the customary monthly short rates.'

"The notes contained this clause: 'This company shall not be liable for any loss that may occur during the time this note remains overdue and unpaid.'

"The first note was presented, but not paid immediately when due, but a short while elapsed thereafter, when payment of same was accepted by the company. About the time the second note became due the general managers of the company, Trezevant and Cochran, sent the note to their local agent, R. M. Chapman, at Alvarado. When the note was received by Chapman, he immediately notified Perkey that he had the note, demanding payment. Perkey was sick in bed at the time and lived some five miles from Alavarado, but he sent his son to tell Chapman to hold up until fall on the note; that if they would he would pay them good interest, as he would have the money to borrow, and would just as soon pay them the interest; and, if not, to send him word and he would get the money and pay it. This message was delivered to Chapman, to which Chapman replied that he had no power to extend the time, but that he would write to the company and inform Perkey immediately, when he got an answer from the company, as to when he would have to pay the note, or whether he would carry it over. Chapman did write to Trezevant and Cochran, general managers for the company, which letter was duly mailed to them. Trezevant and Cochran testified that if any letter was ever received from Chapman concerning such extension they had no recollection of it, and never saw it. It was further shown that they were general managers for several different companies; that they had an employe who received and opened all the mail, and then passed it to them for examination. This employe did not testify.

"We do not believe this testimony is sufficient to refute the presumption that the letter was duly delivered through the postoffice to Trezevant and Cochran; we, therefore, find that the letter was duly received by them.

"No answer was ever made to this letter, nor did Chapman ever mention the subject to Perkey, who relied upon Chapman's informing him what the company would do as to the extension of the note. Perkey

was able to, and would have paid the note, had he been informed that the company would not carry him until fall. He relied on the company's extending the note, and never knew, until this suit was brought, that the company was going to rest their claim on the non-payment of the note. The fire occurred August 3, 1889, about three months after the note was due, and this suit is upon the second note.

"On May 24, 1889, Trezevant and Cochran sent to Chapman all the overdue notes due for premiums, for payment or cancellation of the policies. The Perkey note sued on was omitted from this batch. There was included, however, in the batch the first note given by Perkey, which had been paid by him, but had never been turned over to him by the company. Chapman, on the day after receiving this batch of notes, wrote to said general managers calling their attention to the fact that the note enclosed against B. Perkey had long since been paid off. No reply was sent to this letter of Chapman."

Additional conclusions of fact by the said court:

"1. On May 24, 1889, Trezevant and Cochran wrote Chapman the following letter: 'Dear Sir: Upon examination here of the installment note book, we find there were several notes past due under policies covering risks taken by you. The company, having discontinued the installment business, is very anxious to wind up this branch of it, and requests us to have the past due notes either collected at once or returned to the assured under the policies for cancellation. We enclose you herewith a list of notes due and unpaid, together with the notes themselves and cancellation receipts for each one. If the assured in any of these cases is prepared to take up the notes in full, at once, you may deliver the same and remit us the amount of the note and interest; in all other cases please return the note to the assured, and take up policy and send to us with cancellation receipt signed by the policy holder. We are very anxious to get all of these past due matters closed out at once, by payment or cancellation, and will appreciate your prompt attention to this matter. Yours truly, P. E. Cochran & Co.' 'P.S.—Of course, you and the assured understand that, as soon as the note becomes past due, the policy lapses and is no longer binding upon the company. If any of these parties desire to pay up the notes, send us the policies and we will make endorsements reinstating them, as required by the policy conditions.'

"2. The following letter was written by Chapman to Trezevant and Cochran: 'Alvarado, Texas, May 25, 1889. Messrs. Trezevant & Cochran, Gentlemen: Yours of 24th received, containing a batch of notes for cancellation. I find a note against B. Perkey for $45.00, which was due last October. This note was collected during the fall and remitted to you. Please explain, if I am not correct. Yours truly, R. M. Chapman.'

"3. There was indorsed on the policy the following: 'If the policy has been in force for one month, the short rate percentage for three year policy would be ten per cent, to be retained by the company in case of

cancellation; if the policy had been in force for twelve months, to run for three years after date, then the amount of short rate to be retained is fifty per cent of the premium.'"

The district judge charged the jury in effect as follows: That Chapman, the agent of the defendant, had no authority to extend the time of payment on the note due May 1, 1889; and that the failure to pay the note when due had the effect to suspend the liability of the defendant under the policy, during the time that said note remained due and unpaid; but that the defendant's general agents could waive the payment of said note when due, and extend the time if they so desired; if the jury believed from the evidence that, when plaintiff received notice that the note was due, he sent word to the local agent that he desired an extension of the time of payment, but that, if the payment was insisted upon, he would pay at once, and that this message was communicated to the general agents at Dallas and that they received the message, and that said general agents failed to give notice to the plaintiff that the extension was refused, and by their silence left the plaintiff to believe, until the time of the fire, that an extension had been granted him, and that by reason of such failure the plaintiff failed to pay the note about the time it fell due, they would find for the plaintiff. But if they believed from the evidence that the general agents never received the notice sent by the plaintiff and never consented to grant any extension of time to the plaintiff, they would find for the defendant.

If the claim of the plaintiff, that the failure of the general agents of the defendant to notify him that they did not accept his proposition to extend the time of the payment of the note rendered the defendant liable, be regarded in the light of making a contract of extension, the charge given by the court is incorrect; because it in effect informs the jury that a failure to reply to the proposition of the plaintiff for extension was equivalent to an acceptance of the proposition by the general agents. A contract cannot be inferred from silence, but assent to the proposition must be given in order to constitute such contract. Ins. Co. v. Beatty, 119 Pa. St., 6. The case cited is in point. In that case the holder of an insurance policy before it had expired applied to the agent of the company (who had the power) to renew the policy. To this application no reply was given, and the court held that the silence of the agent did not constitute a contract. The assent of the general agents of the defendant might be proved by circumstances, and the evidence which was before the jury would, perhaps, have sustained a finding by them that the general agents did in fact give their consent, although not communicated to the plaintiff himself. But the issue upon this branch of the case was not submitted to the jury. It is true that in the charge the court told the jury that if they believed that the general agents did not have notice and did not consent to grant the extension, they would find for the defendant. This negative proposition did not cure the error in the charge of the court, because by law the burden was on plaintiff to show the consent to the extension of the time of payment

of his note, and it did not rest upon the defendant to show that it did not consent. The charge of the court in effect instructed the jury,—and they must have so understood,—that, if the agents of the company failed to make any reply to the application of the plaintiff for extension of time, this would in law be equivalent to an acceptance of the proposition.

If we consider the claim of the plaintiff as resting upon a waiver by the defendant of its right to forfeit the policy for non-payment of the note, the charge is even more objectionable. It is assumed by the court in the charge that the failure to reply to the plaintiff's application for extension of time would of itself, without any other circumstances, work an estoppel upon the defendant, and that it would be denied the right to claim the forfeiture arising out of the non-payment. Silence has the effect to estop a party only where it is, under the circumstances, his duty to speak, and where that silence had the effect to mislead the other party to his injury. (Bigelow on Estoppel, 564, 575; Ins. Co. v. Unsell, 144 U. S., 439; McCraw. v. Ins. Co., 78 N. C., 149; More v. Ins. Co., 130 N. Y., 545; Ins. Co. v. Griffin, 59 Texas, 513.)

The evidence in this case might have justified the jury in finding that the defendant, under the circumstances, was estopped to claim a forfeiture of the policy or a suspension of its liability, because the course of dealing with the plaintiff was such as to justify him in believing that the silence of the general agents meant that the extension of time was granted and that it did have the effect upon the plaintiff to cause him to rely upon the insurance secured to him by that policy until the fire occurred. But the circumstances necessary to attend the main fact of silence, in order to give it this effect, were not submitted to the jury, and they could not have found under the charge of the court that such circumstances existed, or that plaintiff did actually rely upon the facts and circumstances, believing that the time for the payment of his note was by the general agents extended. The note was due at the time that it was demanded and the agent of the defendant demanded payment of it. The plaintiff was informed at the time that the agent had no authority to extend the time of payment, and he did not undertake to do so, but, at the request and for the plaintiff, made application to the general agents for extension. The defendant was under neither legal nor moral obligation to make reply to the proposition, but it rested with the plaintiff to ascertain whether or not his proposition was accepted by the defendant, unless the circumstances attending and preceding the transaction were such as to authorize him to rely upon their silence as an acceptance.

The evidence, although undisputed as to the circumstances surrounding the parties at the time, is not so conclusive upon the question of estoppel upon the defendant as to justify this court in holding that the error committed by the District Judge in the charge given to the jury was immaterial. We cannot say that the jury necessarily found under that charge either that the defendant had actually consented to extend

the time, or that the circumstances were such as to justify the plaintiff in relying upon the silence of the defendant's agents, and regarding the matter in the light that the failure to pay the note was waived by the defendant as a ground of forfeiture.

For the error committed by the trial court, as above indicated, the judgments of the District Court and Court of Civil Appeals are reversed and the cause remanded to the District Court for further trial.

*Reversed and remanded.*