WATSON v. RICE. (No. 514.)

(Court of Civil Appeals of Texas. Amarillo. March 14, 1914. Rehearing Denied April 25, 1914.)

1. APPEAL AND ERROR (§ 1051*)—QUESTIONS REVIEWABLE—ASSIGNMENTS OF ERROR—RULINGS ON EVIDENCE.

Where facts are proved without objection, the admission of improper testimony to prove the same facts cannot form the basis for an assignment of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

2. APPEAL AND ERROR (§ 882*) — QUESTIONS REVIEWABLE—RULINGS ON EVIDENCE—OBJECTIONS—WAIVER.

A party who did not object to evidence establishing a fact, and who requested the court to submit a special charge on the point, thereby waived error, if any, in admitting, over his objection, testimony establishing the same fact.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

3. EVIDENCE (§ 419*)—PAROL EVIDENCE—VARYING WRITTEN INSTRUMENTS—CONSIDERATION.

Parol evidence to show the real consideration for a contract is admissible, though contradicting the recited consideration.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1912–1928; Dec. Dig. § 419.*]

4. EVIDENCE (§ 441*)—PAROL EVIDENCE—VARYING WRITTEN INSTRUMENTS.

Parol evidence of the terms and conditions on which a negotiable instrument has been delivered to the payee and of the understanding between the parties is admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2030–2047; Dec. Dig. § 441.*]

5. EVIDENCE (§ 444*)—PAROL EVIDENCE—VARYING WRITTEN INSTRUMENTS.

A buyer of an interest in a machine, who seeks to recover from the seller the sum paid to bona fide indorsees of purchase-money notes, may prove by parol the agreement under which the notes were given and show that the seller orally agreed to return the notes if the buyer within 90 days expressed dissatisfaction with his purchase.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1929–1944, 2049; Dec. Dig. § 444.*]

6. SALES (§ 126*) — CONTRACTS — CONSTRUCTION.

Where a contract of sale stipulated that, if the buyer was not satisfied with the transaction at the expiration of 90 days, the seller would repay the buyer the cash paid, and return the notes given for the balance, the buyer was not required to call on the seller for a repayment and a return of the notes before the expiration of the 90 days, provided he became dissatisfied and determined to do so before the expiration of the 90 days.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 313–317; Dec. Dig. § 126.*]

7. TRIAL (§ 192*)—INSTRUCTIONS—ASSUMPTION OF FACT.

The court in its instructions may assume a fact established by uncontradicted evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 432–434; Dec. Dig. § 192.*]

8. APPEAL AND ERROR (§ 1002*)—VERDICT—CONCLUSIVENESS.

A verdict on conflicting evidence, rendered under proper instructions, is conclusive on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

9. TRIAL (§ 296*)—INSTRUCTIONS—SUBMITTING ISSUES.

Where the entire charge fairly submits plaintiff's case and the facts set up in defense, a charge submitting plaintiff's case is not objectionable as taking defendant's contention from the jury and emphasizing the contention of plaintiff.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296.*]

10. SALES (§ 126*)—CONTRACTS—CONSTRUCTION—RIGHTS OF BUYER.

Where a contract of sale gave the buyer a specified time in which to express his dissatisfaction, and provided that thereupon the seller would refund the cash paid and return the purchase-money notes, the buyer was not required to express his dissatisfaction before the specified time, though he acquired, before that time, knowledge of the facts entitling him to rescind.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 313–317; Dec. Dig. § 126.*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by W. M. Rice against H. D. Watson. From a judgment for plaintiff, defendant appeals. Affirmed.

Synnott & Underwood, of Amarillo, for appellant. Madden, Trulove & Kimbrough, of Amarillo, for appellee.

HALL, J. This is an appeal from the district court of Potter county, and we quote from appellant's statement of the nature and result of the suit as follows: "This was a suit for damages for breach of an alleged contract to redeliver notes of the plaintiff. The plaintiff Rice had executed notes to the defendant Watson, aggregating $825, and paid the defendant $185 in cash, and the defendant negotiated the notes. This suit was brought to recover $185 in cash and the amounts of the notes which plaintiff had to pay by reason of their having been transferred to an innocent purchaser, and he based his cause of action upon an alleged agreement, at the time the notes were executed and the cash paid, by which he claimed the defendant Watson agreed to redeliver the notes to him when the first one became due and repay his cash if the plaintiff Rice was dissatisfied with the transaction and desired the notes returned and the cash repaid." The case was tried before a jury, resulting in a verdict in favor of the plaintiff Rice for the sum of $1,276.52, and judgment was entered accordingly.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

The substance of plaintiff's amended petition is: That on or about April 20, 1909, the defendant Watson was promoting the sale of machinery and a patent right for making concrete building blocks under what is known as the Ferguson system, and that defendant had procured 14 other parties to sign a certain agreement in writing by which said parties agreed to pay defendant $15,000 for one of the machines for making such blocks, and a certain royalty on all blocks manufactured by them. That thereupon defendant presented such contract to plaintiff and requested him to execute the same as the fifteenth man and pay plaintiff $185 in cash and execute three notes at $275 each, due in 90 days, 6 months, and 9 months, respectively. The plaintiff alleges that he repeatedly refused to pay such cash or sign the agreement or to execute the notes; that, in order to induce him to do so, defendant represented to plaintiff that this machine would produce a better building material than would brick and produce it much cheaper than brick, and proposed to plaintiff that, if he would execute the papers and notes and pay the cash, then, in the event plaintiff was not satisfied with the transaction at the time the first note matured, defendant would repay plaintiff such cash, with interest, and return to plaintiff his notes; that, relying upon such promise to return the notes and repay the cash, he executed contract and notes and paid $185; that the 90 days intervening between the date of the execution of the papers and the maturity of the first note was given to plaintiff as the time in which he should investigate the merits of the block machines and the material produced thereby and determine whether or not he was satisfied with the same and whether or not he would demand the return of the notes and the repayment of the money. He alleges further that the defendant Watson fraudulently represented the merits of the machine and material produced thereby, and that all of his representations in regard thereto were false; that plaintiff was induced thereby, and by the promise to repay his money and return his notes within 90 days, to consummate the deal; that during the 90 days plaintiff expressed his dissatisfaction and elected to have the notes and money returned to him; that the defendant sold and transferred the notes to a bona fide purchaser; and that plaintiff had been required to pay them. There was prayer for the principal sum of $1,000, with interest and attorneys' fees provided for in the notes.

The substance of the defendant's pleading is that the machines and the building material produced by them in all things complied with the representations made by defendant; that the citizens subscribing thereto appointed a committee, of which plaintiff was a member, to test the machine and its products, which was done, and thereafter plaintiff executed said notes and paid the $185; that, at the time said notes were executed and the money paid by plaintiff, defendant was not present and acting and did not make any representations whatever; that the entire contract was evidenced by the writings contained in the original contract and notes; that, if there was any agreement to release plaintiff from his obligations, the agreement of all the parties was subsequently reduced to writing, and defendant had no notice and knowledge that plaintiff was relying upon any such agreement; that after plaintiff had made another investigation of the machine, and visited various cities for this purpose, and was fully in possession of all the facts, the defendant offered to release him from all obligations and surrender to him his notes, which proposal plaintiff refused to accept, thereby ratifying the contract and estopping himself from this suit; that, long after the alleged agreement to release plaintiff, the unconditional promissory negotiable notes were executed; and that thereafter plaintiff assisted in securing a charter for the company, became its general manager and one of the directors, and continued to be such manager and director until long after the maturity of said first note, by reason of which plaintiff was estopped.

[1] A number of assignments of error were grouped by appellant, urging the general proposition that the parol evidence tending to prove an agreement on the part of Watson to return the notes and money, if appellee should become dissatisfied within 90 days, tends to contradict and vary the terms of the written contract, consisting of the subscription contract and the notes in question, and was inadmissible. The record shows that this evidence was objected to when the appellee Rice was upon the stand, but the witness J. W. Crudgington testified to the same facts without objection on the part of appellant. The testimony, having been admitted, even if improperly done, cannot form the basis for an assignment, if the same facts are deduced from another witness without objection.

[2] Several special charges were asked by the appellant covering this issue, and, if the position of appellant was tenable otherwise, we think it has been waived by not objecting to the testimony from Crudgington and by requesting the court to submit special charges upon the point. And, even if the matter was properly before the court for consideration, we doubt if the appellant's contention could be sustained.

[3-5] This is not a suit by the holder of the notes themselves, because appellee Rice has paid them, and his petition has the double aspect of suing for the recovery of his money, based upon the verbal agreement to return the money and notes within 90 days in the event he should become dissatisfied, and also an action for fraud and deceit by reason of false representations alleged to have been made by appellant with reference to the mer-

its of the machine and the value of its products for building purposes. The evidence tends to show that Rice was the last man who consented to enter into the contract for the purchase of the machines, and that he was induced to enter into it by the promise on the part of appellant to return him his money, with 10 per cent. interest, and his notes, if he should become dissatisfied within the 90 days. The contention on the part of appellee is that such promise was part of the consideration for the execution of the notes and subscription contract; and it is well established in this state that parol evidence is admissible to establish the real consideration for a contract, although it may tend to vary or contradict the recited consideration; and it has further been frequently held that parol testimony is admissible to show the terms and conditions upon which a written instrument and even negotiable instruments have been delivered to the payee, and to show the entire understanding and agreement between the parties. Under this rule it has been held that where one signed a contract, agreeing to take a certain amount of street car advertising from another at a given rate, and delivered it to the latter's agent, the former could show, in an action on the contract, that the real contract was an oral agreement for a less amount at a lower rate, and that he signed the written contract so that his order might be shown to other prospective customers, without disclosing that he had been given a lower rate. Southern, etc., Ad. Co. v. Metripole S. M. Co., 91 Md. 61, 46 Atl. 513.

If Watson had sued upon the notes it is clear that the appellee could have pleaded failure of consideration and interposed the defense that the machine did not fulfill the warranty; and, in our opinion, the appellee's position is not altered for the worse because he has been forced to pay off the notes and now seeks to recover, basing his action upon fraudulent representations and the agreement above set out. It is held that, if the writing is invalid so that it never had any legal effect, the rule denying the admission of parol evidence has no application, and likewise where its validity is questioned on the ground of fraud. 2 Elliott on Contracts, § 1629. The author quoted further says: "The question usually is as to whether the parol evidence sought to be introduced contradicts or alters the written contract or leaves it to stand unchanged and simply tends to establish an additional collateral agreement. It is often difficult to determine this question, and there is much conflict among the authorities. The form in which the question arises may sometimes be an important factor in determining the admissibility of the evidence, and, referring to leases, it is said that a part of the conflict in the decisions may be explained if we observe that it is one question whether such a collateral agreement may be proved for the purpose of sustaining an action for its breach and a different question whether it may be proved for the purpose of defeating an action on the written lease." Another writer suggests the following test for determining whether a parol agreement is collaterally admissible: If it interferes with the writing it cannot be proved. If, on the other hand, it relates to a matter beyond the scope of the written contract, the writing does not affect it. In each case it must be determined from the character of the writing and from the circumstances of the case whether the parol agreement offered to be proved was in regard to a matter which it is reasonable to infer the parties thought settled by the terms of the writing and, if it was, evidence to show it should be excluded. The writing must speak just so far as it is fair to conclude that the parties, acting as reasonable men, and using intelligible language, intended it should speak, and no further. Id. § 1633. "There is also a class of cases in which it is held that parol evidence of a collateral contemporaneous agreement, which assumes the contract as indicated by the writing and undertakes to deal with some contingency or new relation of the parties in the future, that may arise under the written agreement, is admissible." Id. § 1634. "The general rule which excludes parol evidence, when offered to contradict or vary the terms, provisions, or legal effects of a written instrument, is subject to many qualifications. Among these qualifications is one to the effect that conditions relating to conditions precedent may be shown by extrinsic evidence. A party who concedes that the instrument evidencing the contract was placed in the possession of the party seeking relief, but claims that the latter took it with the understanding that it was not to go into effect until the happening of some other or further event, and that such event has not transpired, is not considered as one seeking to vary or contradict a written contract, but is one endeavoring to show that no contract between the parties ever in fact came into existence. For this reason evidence of such conditions precedent is held admissible. The cases which so hold merely give recognition to the well-settled rule that an instrument may be delivered by one party to another to take effect on the happening of a contingency, and that, by such collateral agreement, the legal operation of the writing is merely postponed until the happening of the contingency." Id. § 1636. We think the court did not err in admitting the testimony and in overruling the exceptions and submitting the question to the jury. Merchants' National Bank v. McAnnulty, 31 S. W. 1091; Id., 89 Tex. 124, 33 S. W. 963; Downey v. Hatter, 48 S. W. 32; Pope v. Taliaferro, 115 S. W. 309; Mfg. Co. v. Powell, 78 Tex. 53, 14 S. W. 245; I. & G. N. Ry. Co. v. Dawson, 62 Tex. 262.

[6] The appellee's allegation was that, if the plaintiff was not satisfied with his con--

tract at the time of the maturity of the first note, then the appellant would relieve him of his obligation and refund the cash payment and return the notes. The proof sustained this allegation. Under this state of the pleadings and evidence, it was not necessary for the appellee to call upon appellant for a return of the notes and repayment of the money prior to the expiration of the 90 days, provided he became dissatisfied and determined to do so before the expiration of said time. The evidence tends to show that, at the time the first note matured, Watson was not in the state, and it further shows that, notwithstanding his agreement, he had transferred the notes to the bank at Shattuck, Okl., within seven days from the date of their execution. In our opinion the court's charge is not subject to the criticism urged in the thirty-fifth, forty-seventh, fifty-third, and fifty-ninth assignments of error.

[7] The thirty-sixth and thirty-seventh assignments of error complain of this portion of the third paragraph of the charge that if the jury "find from the evidence that defendant, soon after the execution of said three notes, negotiated or transferred said notes to an innocent purchaser before maturity of the first note, thereby placing them beyond his control, and that plaintiff was compelled to pay said notes," etc., and insists that it assumes that the notes were placed beyond the control of the appellant. The uncontroverted evidence shows that appellant sold the notes to an Oklahoma bank, which bank in turn sold them to an Amarillo bank for value before their maturity, and without notice of any infirmity existing in them. It is not error for the court in its charge to assume the truth of uncontroverted evidence.

[8] Under the fortieth, forty-first, and sixty-first assignments of error, appellant complains that the court instructed the jury not to consider the question of defendant's tender to cancel their agreement. If there was error in this charge, it was in assuming that the defendant Watson had made a tender. The evidence fails to show that any such tender as the law requires was made by him at that time, and we think, under the agreement, Rice had the full time stipulated in which to decide whether he would retain his stock or demand a rescission of his subscription. The question of Rice's knowledge of the conditions and of the truth or falsity of the representations which had been made was properly submitted by the court under conflicting evidence, and has been settled by the verdict of the jury. We think the court correctly refused the instruction requested by appellant upon this issue.

[9] Under the forty-fifth and fiftieth assignments of error appellant insists that the court erred in the fifth and seventh paragraphs of his general charge, wherein the jury are instructed that if they believe the machines and the materials and the process in manufacturing fail to produce the concrete cement blocks of the class, character, value, durability, and costs of producing, substantially as represented by the defendant and as alleged by plaintiff, and that the failure, if any, to make such blocks was due to unskillfulness in the operation of said machine and preparation of the material, to find for the defendant. The charge is criticised because it takes the defendant's contention from the jury and emphasizes the plaintiff's contention. If we read the entire charge, we find that the court has fairly submitted the plaintiff's case, as well as the facts set up in defense by the defendant upon this question. These assignments are overruled.

[10] The remaining assignments, which relate to the question of ratification and the sufficiency of the charge in other respects, are overruled. The evidence does not show conclusively that appellee was thoroughly cognizant of the defects and shortcomings prior to the expiration of the 90 days. The express terms of the contract gave him a specific time in which to express his dissatisfaction, and to hold that he should have expressed it sooner, even though he had come into full knowledge of all the facts and circumstances entitling him to rescind, would be to make a new contract for the parties.

The evidence admitted by the court and complained of by the eleventh and nineteenth assignments of error should not have been permitted; but, since the same facts were elicited without objection from other witnesses and at other times during the trial, the error is harmless. The evidence of appellee, to the effect that he had observed certain publications bearing on cement as a building material, and had found no reference in them to the Ferguson system, was properly admitted in rebuttal to the evidence of defendant's witness James Barron.

The last three assignments, submitted together, go to the sufficiency of the evidence to support the verdict and the judgment. The evidence, taken as a whole, while sharply conflicting upon the main issues, is sufficient to sustain both theories of the case insisted upon by plaintiff in the court below.

Upon a review of the entire record, we believe a proper verdict and judgment has been rendered, and such matters as may be deemed irregularities in the conduct of the trial have not affected the determination of the case upon its merits.

We therefore affirm the judgment.