GLENS FALLS INS. CO. v. WALKER.*
(No. 8387.)

(Court of Civil Appeals of Texas. Ft. Worth.
June 3, 1916. Rehearing Denied
July 1, 1916.)

1. INSURANCE ☞665(2) — ACTIONS — SUFFI-
CIENCY OF EVIDENCE—DELIVERY OF POLICY.
　Evidence *held* to sustain a verdict that a
fire insurance policy was delivered to assured.
　[Ed. Note.—For other cases, see Insurance,
Cent. Dig. § 1709; Dec. Dig. ☞665(2).]

2. INSURANCE ☞235—ACTIONS—SUFFICIENCY
OF EVIDENCE—CANCELLATION OF POLICY.
　Evidence *held* to sustain a verdict that a fire
insurance policy was not canceled by mutual
consent.
　[Ed. Note.—For other cases, see Insurance,
Cent. Dig. § 507; Dec. Dig. ☞235.]

3. ESTOPPEL ☞56—EQUITABLE ESTOPPEL—
ESSENTIALS—PREJUDICE TO PARTY CLAIM-
ING ESTOPPEL.
　Assured's acquiescence in an insurance
agent's mistaken statement that contemplated
foreclosure proceedings voided the policy does
not estop him from denying that the policy was
canceled by mutual consent, where there is no
proof that his silence misled the insurer.
　[Ed. Note.—For other cases, see Estoppel,
Cent. Dig. § 142; Dec. Dig. ☞56.]

4. INSURANCE ☞651(4)—ACTIONS—EVIDENCE
— ADMISSIBILITY — CANCELLATION OF POL-
ICY.
　Where the defendant fire insurance company
claimed that a policy had been canceled by mu-
tual consent in a conversation between its agent
and assured, the assured's explanation that he
understood the policy was void only during cer-
tain foreclosure proceedings is admissible, where
the conversation was somewhat ambiguous.
　[Ed. Note.—For other cases, see Insurance,
Cent. Dig. § 1673; Dec. Dig. ☞651(4).]

Appeal from District Court, Tarrant Coun-
ty; R. B. Young, Judge.

Action by Herbert G. Walker against the
Glens Falls Insurance Company. Judgment
for plaintiff, and defendant appeals. Af-
firmed.

See, also, 166 S. W. 122.

Crane & Crane, of Dallas, for appellant.
Charles Kassel, of Ft. Worth, for appellee.

CONNER, C. J. Appellee recovered a
judgment for $1,150 upon a policy of fire in-
surance issued by the appellant company in
terms payable to appellee "as his interest
should appear" and covering a building de-
stroyed by fire and upon which appellee had
a lien. The defenses were that the policy
had never been delivered as an operative in-
strument, or, if so, that it had later been mu-
tually canceled before the loss. To this lat-
ter defense appellee replied that, if there had
been a cancellation by agreement, but which
was denied, the same had been induced by a
mutual mistake of fact. The issues thus in-
dicated were submitted to a jury, which re-
turned a general verdict in favor of appellee
for the amount specified in the judgment.

For various reasons, to be hereinafter more
particularly noticed, appellant here insists
that the court should have given a peremp-

tory instruction to find for defendant as re-
quested, and an exception was taken to the
action of the court in refusing to give this
instruction; but the reason or reasons upon
which the requested instruction was based
were not set forth in the bill of exception,
nor were reasons assigned in appellant's mo-
tion for a new trial, and appellee therefore
objects to our consideration of the assign-
ment on these grounds. This court, and
most, if not all, of the other Courts of Civil
Appeals, have held, in accordance with the
provisions of the act approved March 29,
1913 (see General Laws 1913, p. 113), that to
be available on appeal it must appear that
specific exception was made to the action of
the court in refusing a special instruction.
See Mutual Life Ins. Ass'n v. Rhoderick,
164 S. W. 1067; Heath v. Huffhines, 168 S.
W. 974; St. L. & S. W. Ry. Co. v. Wadsack,
166 S. W. 42; T. & P. Ry. Co. v. Tomlinson,
169 S. W. 217; Cleburne Street Ry. Co. v.
Barnes, 168 S. W. 991; Elser v. Putnam
Land & Development Co., 171 S. W. 1052;
Bohn v. Burton Lingo Co., 175 S. W. 173;
King v. Gray, 175 S. W. 763. Not only so,
but this court has further held that the spirit
of the enactment referred to and of our laws
relating to bills of exception require that the
excepting party should set forth in his bill
of exception the specific reasons therefor to
the end that the trial court may be properly
informed and have presented an opportunity
to correct the error, if one was thus made to
appear. See G., C. & S. F. Ry. Co. v. Loyd,
175 S. W. 721. We yet entertain the views
expressed in the decisions cited and under
ordinary circumstances would feel no hesita-
tion in sustaining appellee's exception to ap-
pellant's assignment to the action of the
court in refusing to give the peremptory in-
struction; but since the decisions cited, as
we are informed, our Supreme Court has
granted a writ or writs of error indicating
that the statute in force prior to the act of
1913 above referred to is controlling. This
prior statute (Revised Statutes 1911, art.
1974) provides that when instructions are re-
quested the judge shall note distinctly which
of them he gives and which he refuses and
shall subscribe his name thereto, and that
such instructions "shall be filed with the
clerk, and shall constitute a part of the rec-
ord of the cause, subject to revision for er-
ror without the necessity of taking any bill
of exception thereto." Of course, as appel-
lant now contends, if this article of the stat-
ute controls, and if it be unnecessary to take
an exception to the action of the court in re-
fusing an instruction, it necessarily follows
that appellee's objection to the assignment
under consideration must fall. We have
therefore concluded, in view of the uncertain-
ty thus indicated, to consider appellant's
first assignment of error.

[1] It is first insisted, in effect, that the evi-

dence is wholly insufficient to support the verdict of the jury on the issue of the delivery of the policy. On a former appeal (see 166 S. W. 122) we held that the evidence then presented sufficiently supported a verdict in appellee's favor upon the issue, and as we think the evidence on the last trial was equally, if not more, forceful. While it is true that no witness testified specifically to the delivery of the policy, yet the evidence in substance was to the effect that appellee had occasion to secure many policies of insurance, and that one Glenn Walker, a brother, was engaged in the insurance business and procured for appellee all original policies that his business necessitated and caused the issuance of all renewal policies that were required; that as to the piece of property in question appellee had procured a policy of insurance in a company going out of business and which for this reason canceled the policy on the property involved in this controversy a year before its expiration by the terms used; that thereupon the policy sued upon in this case was secured as a substitute for the canceled policy referred to; that by the practice of the insurance office conducted by Glenn Walker, which was just across the hall from the office of appellee, insurance policies when issued or when renewed by the insurance agency were brought into appellee's office and placed upon the desk or delivered to whomsoever was in the office; that the policy in question was found among others of the appellee's policies. One or more of appellee's witnesses distinctly testified to the fact that the policy in question had been in appellee's office and among his other insurance papers some time, perhaps a week or two weeks, before the loss under consideration. True, there was testimony in behalf of the appellant to the effect that after the fire the policy was discovered among other papers of the appellant insurance company indorsed "canceled," and Glenn Walker, the agent, testified to the effect that he took the policy into the office of appellee for the purpose of delivering it, but that appellee then mentioned the fact that he had commenced foreclosure proceedings upon the premises in controversy, whereupon he (Glenn Walker) informed him that that fact voided his policy, and thereupon, as he (the witness) remembered, he returned the policy to the company directing its cancellation. This witness, however, was not positive in his testimony to the effect that the policy was in fact not delivered, and there was further testimony in behalf of appellee to the effect that the day of the conversation as related by the witness Glenn Walker and upon which, as Glenn Walker testified, he was informed of the foreclosure proceedings, was several days, perhaps a week or more, after the policy in question was known to be among appellee's other policies and handled by his office force. There was also testimony to the effect that one William

Riggs, another representative of the appellant company, came into appellee's office and called for the policy in question, and that it was delivered to him by one of appellee's employés; Riggs at the time not stating what he wanted with the policy. While Riggs denied that he thus secured the policy from the possession of appellee and that both Riggs and Glenn Walker gave a different account of its return to the appellant company, yet on the whole we cannot say, as appellant insists, that the evidence is only susceptible of the construction that the policy was never delivered. It is to be remembered that in determining this question effect must be given to the testimony most favorable to appellee, and, thus viewing the evidence, we feel that it cannot be said that the court committed error in refusing the peremptory instruction and in submitting the issue of delivery to the jury. No complaint has been made of the terms in which the issue was submitted, and we think the verdict of the jury on the issue must be sustained.

[2] Appellant further insists that the peremptory instruction should have been given for the reason that the undisputed evidence shows "that the contract had been canceled by mutual agreement several weeks prior to the date of the fire"; but the evidence, as we think, by no means requires this conclusion. Glenn Walker, himself, testified that:

"I wrote the company at the time this matter came up to the effect that the policy was never delivered, but that before the policy was delivered I ascertained from conversation with my brother that foreclosure proceedings were pending against the property, and I refused to deliver the policy and took it back and had it canceled. I never did claim to them that this policy after it was in effect, and after it was delivered, was canceled by mutual consent between me and Herbert Walker. I never wrote or claimed any ·such thing as that to them, and I never claimed to them that, the policy being in effect, I had given regular notice of cancellation to Herbert Walker and had taken up the policy at the end of ten days. It was my understanding that I had not delivered that policy, and that was my belief, and I definitely and certainly recollect that I never did undertake to cancel this policy regularly under its provisions as being an existing policy; and it is furthermore true, under no circumstances, and never did I undertake to claim to my company or anybody that Herbert (appellee) and I had canceled this policy by mutual consent after it was in effect. The only thing I claim, and the only thing I ever claimed, is that I did not deliver the policy to him at all."

This testimony is wholly inconsistent with the theory of a mutual cancellation of the policy. This defense rests, so far as we have been able to ascertain, upon the testimony of appellee, to the effect that, when Glenn Walker came into his office and he told him that he had been required to institute foreclosure proceedings upon the property in question, Glenn Walker replied:

" 'That renders your policy void.' * * * I did not tell him anything. I took it for granted the statement that the policy was void was correct. * * * I did not feel there was anything for me to agree to. It was not my understanding from that conversation with my broth-

er that, during the time these foreclosure proceedings were pending, I had no insurance under this policy, in that I was performing an act that the insurance company said voided my choice to exercise that option; if they chose to exercise the option they had, it would void my policy. I did not know a thing about their right. I just took that statement for granted, that Glenn was right on it. Glenn did not say anything to me as to whether the company would then or in the future, if I did not get the title back, exercise the option to declare it void; he said the policy was void, and I just took that statement for granted and did not consider whether it was right or wrong, or whether he was asking me to agree to the evidence of it. He never used the word 'canceled' in any way and never wrote me; never used that word at all. * * * He did not tell me anything at that time as to what would be done or should be done with the policy itself. He made no statement or requests to me with reference to the physical policy, at that time. He made no other remark about that than what I have stated. In other words, he did not say, 'Well, I am going to take this policy back and cancel it,' or anything like that. There was no statement like that, just merely the words, 'Foreclosure proceedings voids your policy.' "

On redirect examination he further testified:

"I told Glenn, at the time I had this conversation with him, that this suit (the foreclosure suit) might be ended in a few weeks, and he said that would be all right, and I understood that while foreclosure proceedings were pending, if a fire occurred, I could not get my money, and I understood, also, if the suit was settled right, that that policy would be a good policy. In other words, I will explain it by a circumstance that frequently happens: If you get a policy and you put gasoline in your house, that policy is void; if you move the gasoline away, your policy is all right, you have a policy still, although, really at one time, your policy was void."

[3] While Glenn Walker, the agent, testified that it was the general business policy of his company not to insure premises covered by liens and to cancel policies upon foreclosure proceedings, the policy under consideration in fact contained, among other special provisions, one to the effect that the policy in question "should not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by foreclosure or other proceedings or notice of sale relating to the property." So that, on the whole, we do not think that appellee's mere silence or acquiescence in the erroneous statement of Glenn Walker that the foreclosure proceedings rendered the policy void requires the conclusion of a mutual cancellation of the policy, as alleged and urged by the appellant in this case, and it is quite clear under the evidence that there was no cancellation of the policy under its terms providing that this might be done upon giving ten days notice, etc. Nor, even if it had been made an issue in the pleadings, would appellee's mere silence or acquiescence in the mistaken statement of Glenn Walker estop him in the absence of some proof that such silence or acquiescence had the effect to mislead the appellant company to its injury. See East Texas Fire Ins. Co. v. Perkey, 89 Tex. 604, 35 S. W. 1050.

The foregoing conclusions, of course, render wholly immaterial the further contentions relating to the question of whether the mutual agreement to cancel was avoided because of a mutual mistake of fact on the part of both appellee and Glenn Walker. Nor do we think there is any force in appellant's further contention that Glenn Walker was such agent of the appellee in the procurement and renewal of the policies as to make his act in indorsing the policy canceled the act of appellee. Appellant's first assignment of error and all propositions thereunder are, accordingly, overruled.

[4] Appellant further assigns error to the action of the court in permitting the appellee to testify, over its objection that the testimony was irrelevant and incompetent, to the effect that he did not understand from the conversations of Glenn Walker that he (Glenn Walker) was proposing a mutual cancellation of the policy, but that he merely understood that if a fire occurred, during the foreclosure proceedings, he could not get his money, and that if the foreclosure suit was settled that the policy would be valid, etc. The conversations, however, already above noted do not necessarily import a contract, and we are of the opinion that the court properly ruled in this matter, for the essence of a contract is that the minds of the parties thereto must meet on the same thing, and the intent or understanding of the parties is necessarily an essential element, and where the agreement relied upon is to be deduced, if at all, from conversations of a more or less indefinite character and that may or may not support the contention of a contract, the understanding of the parties—the sense in which the terms were received, the construction given the terms—is relevant when the conversations or declarations at the time, under all of the circumstances, are reasonably susceptible of the construction given them and acted upon by one of the parties to the asserted agreement. Even in cases where the foundation of the alleged contract is in writing and the words, therefore, ascertainable with certainty, yet, if the terms used are ambiguous or indefinite or susceptible of different conclusions, the practical interpretation given the instrument by the parties may be proved and, as said in the authorities, is often entitled to great weight. 3 Jones on Evidence, § 453.

We are of the opinion further that the evidence supports the verdict of the jury in appellee's favor, and, no other question being presented by the assignments, the judgment will be affirmed.