TEXAS LIFE INS. CO. et al. v. HUNTSMAN et al. (No. 1130.)

(Court of Civil Appeals of Texas. Amarillo. March 14, 1917.)

1. TRIAL ⟨key⟩253(10)—INSTRUCTIONS—APPLICABILITY TO ISSUE—ACTION ON NOTE FOR PREMIUM—INSTRUCTION.

In action on note for insurance premium, an instruction presenting assured's theory that the note was not to be delivered except upon issuance of a policy, and that no policy was issued, properly ignored the insurance company's claim that a written agreement evidenced by the application and receipt governed the transaction.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 621, 622.]

2. BILLS AND NOTES ⟨key⟩534—DAMAGES.

Where payees, contrary to their agreement, transferred a note to an innocent purchaser who secured a judgment, including attorney's fees, against the maker, the maker can recover the entire amount, and not merely the face of the note, from the payees.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1946, 1947.]

3. INSURANCE ⟨key⟩130(7) — APPLICATION FOR POLICY—REJECTION—EFFECT.

Where assured's application had been rejected, his silence regarding the company's proposal to later accept him is not an acceptance, since he was under no duty to speak.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 202.]

4. ESTOPPEL ⟨key⟩95 — EQUITABLE ESTOPPEL — SILENCE.

Unless a party is bound to speak, his silence cannot work an estoppel.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 285–287.]

5. EVIDENCE ⟨key⟩441(11) — ACTION ON NOTE FOR PREMIUM—ADMISSIBILITY OF EVIDENCE.

In indorsee's action on note for premium, testimony that payee insurance agents agreed not to negotiate the note until the policy was delivered is admissible, where defendant maker seeks recovery over against the payees.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1799–1812, 2043, 2044.]

6. INSURANCE ⟨key⟩188(3)—INSTRUCTIONS — ASSUMING FACTS.

In action on note for insurance premium, a requested instruction assuming that a contract regarding the note was not abrogated by the company's refusal to issue the policy was properly refused.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 245, 406, 407.]

Appeal from Gray County Court; Siler Faulkner, Judge.

Action by Fred O'Dell against J. M. Huntsman and others. Judgment for plaintiff, and for defendant J. M. Huntsman over against defendants Texas Life Insurance Company, Gaston & King and the last-named defendants appeal. Affirmed.

W. A. Davidson, of Amarillo, for appellants. S. E. Boyett, of McLean, and Madden, Trulove, Ryburn & Pipkin and Kimbrough, Underwood & Jackson, all of Amarillo, for appellees.

HALL, J. Fred O'Dell sued J. M. Huntsman to recover on a note executed by Huntsman January 8, 1915, payable to F. E. Gaston and J. B. King, and by them indorsed without recourse. The note is in the sum of $347.60, bears interest at the rate of 6 per cent. per annum from date, and contains a stipulation for 10 per cent. attorney's fees.

The defendant Huntsman answered, alleging that the note was given for the first year's premium on a $10,000 policy for which he had made application to the Texas Life Insurance Company upon the solicitation of its agents, Gaston & King; that at the time of taking said application and the execution of the note the agents agreed that if no policy should be issued on the application the note would be returned and surrendered to him; that afterwards he was informed that his application had been rejected, and thereafter he had treated said transaction as at an end, and demanded the return of the note to him; that no policy had ever been issued upon the application or if issued was never delivered or tendered to him; that O'Dell bought the note with notice of said facts, and was therefore not entitled to recover. He prayed that the life insurance company and the agents, Gaston & King, be made parties to the suit, and that in the event of a recovery against him he recover over against such defendants the amounts adjudged.

The insurance company answered Huntsman's plea with a general denial and specially, as follows:

"That the agreement between it and Huntsman for the issuance of the policy was in writing, a part of which writing consisted of a binding receipt, delivered to said defendant at the time of the transaction; that by the terms of the binding receipt it was provided that if a policy should not be issued on the application, and only in that event, the sum paid by applicant to the company for the premium should be returned to him on the surrender of such receipt, and that if the policy should be issued and was not accepted by applicant, the premium paid should be retained by the company in consideration of its carrying the insurance for the time paid, and that it issued a policy in accordance

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

with the application; that by the terms of said binding receipt it was further provided that the applicant should undergo such medical examination as the company might deem necessary; that after Huntsman's original examination, it was deemed necessary by the company that he should undergo further examination by its medical director, which examination was made and the policy duly issued in accordance with the application; that said Huntsman agreed and assented to said second examination and consented to and acquiesced in the issuance of a policy thereon; that the policy was issued to Huntsman on April 16, 1915, and was on or about May 1, 1915, mailed to defendant Huntsman from Amarillo, Tex., properly stamped and addressed by the company's agent; that the policy was in fact received by defendant Huntsman, but if not, he was advised that it had been issued and was in full force and effect, and an offer was made to him to issue a duplicate therefrom, which was refused; that said policy was in full force and effect for the time paid for by Huntsman and he received the benefits thereof; that said company had complied with its contract, but that in any event the defendant Huntsman by consenting to the second examination and the issuance of a policy thereon waived any right which he may have had to refuse the policy under the original application, and was estopped from any recovery against the insurance company."

By supplemental answer Huntsman replied, setting forth in detail the facts to which he subsequently testified with reference to the second medical examination and the refusal of the policy. The issues were submitted to a jury, resulting in a verdict for O'Dell, against Huntsman, for the amount of the note, principal, interest, and attorney's fees, and in favor of Huntsman, over against the insurance company and Gaston & King, jointly and severally, for the same amount. From a judgment entered accordingly, the defendants have prosecuted this appeal.

The application for the insurance signed by Huntsman had attached to it what is termed a "binding receipt," the fourth paragraph of which is as follows:

"If a policy be not issued on the application and examination received by the company at its home office (and only in that event) the sum above mentioned will be returned on the surrender of this receipt to the company. In event the policy should be issued and the applicant declines to accept the same, any premium paid shall be retained by the company in consideration of its carrying the insurance for the time paid."

The binding receipt states that the amount of $347.60 was paid in cash, but it is admitted that no cash was in fact paid, and that the note sued on was given in lieu thereof. The note was transferred by Gaston & King to O'Dell, whom the jury found to be an innocent purchaser for value. It appears that a few days after the application was signed Huntsman was examined by Drs. Donnell & Ballard, of McLean, the company's local examiners. The record of their examination was forwarded by them to the company. Though the reason was not stated in the letter under date of February 13, 1915, the company wrote Huntsman that the risk had been declined. Gaston & King immediately wrote the insurance company that they had further information with refer-

ence to Huntsman, and asked for a reconsideration of the application. Dr. Donnell also wrote the company that upon further examination he thought Huntsman would pass the requirements. According to the testimony of the company's medical examiner, Dr. Curtis, by reason of these developements it was decided to reopen and reconsider Huntsman's application, and he was so advised February 24, 1915. In accordance with this determination the medical director, Dr. Curtis, and its actuary, A. Sigtenhorst, went to Gray county to make a personal investigation of this and other cases in that locality. The conflict in the evidence is sharp as to what was said and done before and after the second examination. The result of the trip to Gray county was that on April 16th Sigtenhorst wired the company from Dallas to issue the policy, and the uncontroverted testimony is that it was issued and was received by Gaston about April 20, 1915, and mailed by him to Huntsman from Amarillo about the date of its receipt by him. There is considerable correspondence in the record between the parties, the material parts of which will be referred to further in this opinion.

[1, 2] The first assignment of error is that the court erred in giving to the jury, over the defendant's objection, the following charge:

"If you find and believe from a preponderance of the evidence that it was agreed by and between the defendant Huntsman and the said Gaston & King at the time of the execution of the note sued upon that said Gaston & King were to hold said note until the insurance policy applied for by said Huntsman, with the Texas Life Insurance Company should be delivered to said Huntsman, and you should further find that said agreement to hold said note, if any, was not complied with by said Gaston & King, and should further find that when the notice was given to the defendant Huntsman by said insurance company that his application for insurance had been rejected by said insurance company, that the said Huntsman treated said application and obligation thereunder as at an end, and did not thereafter renew his said application for insurance with said company, not enter into any agreement with said insurance company for the issuance of the policy to him, then you will return a verdict in favor of the defendant Huntsman, upon his cross-action herein and against the defendants Texas Life Insurance Company, J. B. King, and F. E. Gaston, jointly and severally, for such amounts, if any, as the plaintiff, Fred O'Dell, may recover against said defendant J. M. Huntsman."

Appellants' first proposition under this assignment is that the charge of the court ignored the written contract, as evidenced by the application and binding receipt, and submits the case alone on the alleged oral agreement of the agents to hold the note until the policy should be delivered.

It was proper for the court, in presenting the appellee's theory of the case, to ignore the written contract. Appellee sought to recover from appellants because of a breach of the contract to hold the note until the policy had been actually delivered, and the court should not have submitted with that theory

the defense based upon the written contract. Under this assignment appellants complain that the recovery should have been for $347.-60, instead of $380.60; the latter sum being the amount of the note, interest, and attorney's fees. Appellants violated their agreement to hold the negotiable note until the consummation of the contract, and by transferring the note to O'Dell, an innocent purchaser, rendered appellee liable for the full amount of the note, interest, and attorney's fees, and therefore such amount was the measure of his damages for the breach.

[3, 4] By a third proposition under this assignment, which is really not germane, it is insisted that if Huntsman is permitted to ignore the written contract and rely upon the oral promise of the agents, then he must stand or fall upon the oral contract alone, and should not recover because the evidence shows conclusively a delivery in law of the policy under the oral agreement. This proposition is advanced upon the theory that the written contract, as evidenced by the application, note, and the binding receipt, was still in existence. The jury evidently considered the written contract at an end when the company declined to accept the risk and issue the policy. The evidence supports this finding, and we think it is correct. The application had been rejected and the company had declared its intention not to issue the policy. That certainly ended the negotiations. Subsequently, upon a re-examination of Huntsman, by the company's medical examiner, the proposition was made to appellee that upon the report of the examiner the policy would be issued. It is not contended that he affirmatively agreed to accept the policy, but under a subsequent assignment appellant insists that because he did not flatly refuse to accept the policy he waived his right, if any he had, to reject it, and that the question is one of estoppel by waiver. As we understand the case, when the application was rejected neither party to the contract had any rights. While it is true that by an agreement the original contract may have been revived the record fails to show any such agreement, and the issue resolves itself to a simple question of proposal on the part of the company, without an acceptance, unless such acceptance may be implied from the silence of Huntsman. The rule is that unless a party is bound to speak, his silence cannot be construed as an acceptance or an estoppel. East Texas Fire Ins. Co. v. Perkey, 89 Tex. 609, 35 S. W. 1050. The proposition made by the company to revive the original application, note, and binding contract imposed no obligation upon Hunstman to speak, and his silence certainly cannot be construed as an acceptance.

[5] It is insisted under the second assignment that the court erred in permitting the defendant Huntsman to testify over the ob-

jections of the appellant, with reference to the agreement on the part of the agents that the note executed by him and delivered to them representing the first premium on the policy would be held by them and not negotiated until said policy should be delivered. We think this testimony was competent to establish his action against appellants. While the binding contract recites that $347.-60 was the consideration for the policy, as a matter of fact, the execution of the note sued on was understood to be the real consideration and parole evidence of the terms and conditions on which the note was delivered by Huntsman to the agents was admissible. Watson v. Rice, 166 S. W. 106, writ of error refused 170 S. W. xviii.

[6] The third assignment is based upon the refusal of the court to give the defendant's first special instruction, in which the court is asked to charge the jury as to the legal effect of the binding receipt. If for no other reason, the court was correct in refusing this instruction, because it assumes that the binding receipt is still a part of the contract, and that its effect was not abrogated by the refusal of the company to issue the policy. The court could not assume that the original contract was still in existence, or that it had been revived. For the same reason the fourth assignment should be overruled.

We think the court's charge submitted to the jury the question of whether Huntsman ever agreed to accept the policy after the second medical examination, and, having held that his silence could not be construed as an acceptance, we think the court was correct in refusing to give special instruction No. 5.

Finding no reversible error in the record, the judgment is affirmed.

BOYCE, J., disqualified, not sitting.