## WATERS v. BYERS BROS. & CO.
### (No. 1818.)

(Court of Civil Appeals of Texas. Amarillo. June 29, 1921.)

1. **Mortgages ⚬⟾454(1)—Answer alleging trust deed was secured by misrepresentations held to state defense to foreclosure.**

An answer alleging that the trust deed on land was secured by plaintiff's misrepresentations that he desired it merely as additional security to enable him to float defendant's note secured by chattel mortgages on cattle to perform his agreement with defendant, that the notes were to be paid only from the proceeds of the sale of the cattle and their increase, whereas plaintiff intended merely to secure the trust deed in order to make himself whole in the transaction and attempted to foreclose it and the chattel mortgage at the first opportunity, states a good defense as against general demurrer in so far as the trust deed is concerned.

2. **Mortgages ⚬⟾454(3)—Answer held to allege agreement notes were to be paid only from sale of cattle.**

An answer alleging that the notes in mortgage foreclosure suit were given under an agreement that defendant was to take charge of the cattle for the purchase of which the note was given and pay the notes only from the sale of the cattle and their increase alleges parol agreement specifying the fund from which the notes were to be paid, not a condition on which the notes were delivered.

3. **Evidence ⚬⟾432—Proof notes were payable only from profits not admissible as evidence of failure of consideration.**

Though parol evidence to show want or failure of consideration for a note is always admissible, proof that plaintiff had failed to perform a parol agreement inconsistent with the terms of the note in pursuance of which the note was given is not admissible on the theory that it shows a failure of consideration.

4. **Evidence ⚬⟾442(1)—Collateral oral agreement not admissible if it contradicts instrument.**

The rule that, where the writing is only a part of the agreement, and there was no intention to reduce the entire agreement to writing, parol evidence to show the entire agreement made in connection with the writing may be introduced, is coupled with the qualification that the parol agreements thus sought to be shown must be consistent with, and not contradict, the terms of the written part of the agreement.

5. **Evidence ⚬⟾420(7) — Negotiable Instruments Law did not change rule in states permitting evidence of conditional delivery.**

Negotiable Instruments Law, § 16, permitting proof that delivery was conditional or for a special purpose only, was intended merely to adopt the rule previously followed in the state and in the majority of other jurisdictions that delivery on condition precedent to the in-

⚬⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

strument taking effect as an obligation might be shown, and was not intended to change that rule.

### 6. Evidence ⬥444(6)—Permitting proof of delivery for special purpose does not permit contradiction of instrument.

The provision of Negotiable Instruments Law, § 16, authorizing proof that a note was delivered for special purposes only, when construed with the following clause that it was not for the purpose of transferring property in the instrument, does not permit proof of delivery under collateral agreement contradicting the terms of the note.

### 7. Evidence ⬥444(6) — Parol evidence inadmissible to show delivery on condition as to time and manner of payment.

Though it is permissible to show by parol evidence that a note was delivered on a condition precedent to its taking effect as an obligation, it is not permissible, either before or since the enactment of Negotiable Instruments Law, § 16, to admit parol evidence that the note was delivered on a condition affecting the time and manner of its payment so that such evidence is not admissible to show an agreement that it was to be paid only from the proceeds of the sale of certain cattle.

Hall, J., dissenting in part.

Appeal from District Court, Hemphill County; W. R. Ewing, Judge.

Action by Byers Bros. & Co., a livestock commission corporation, against Thomas Waters. Judgment for plaintiff on sustaining a general demurrer to the answer, and defendant appeals. Reversed and remanded.

Hoover, Hoover & Willis, of Canadian, for appellant.

Sanders & Jennings, of Canadian, for appellee.

HALL, J. Appellee, a live stock commission corporation, sued the appellant to recover upon a series of notes, payable to appellee, and to foreclose a chattel mortgage upon certain live stock and a deed of trust upon certain lands described in the instruments which were executed to secure payment of the notes. The court sustained a general demurrer to appellant's answer which, omitting the formal parts, is as follows:

"(1) Defendant says that the notes which formed the basis of the plaintiff's suit are renewal notes, of a series of notes given by the defendant to plaintiff, on or about the ——— day of ———, 19—, and that such notes were given and a mortgage upon the cattle in controversy, according to the terms of an agreement, and as a part of the same transaction, in which it was understood and agreed that the said notes represented the agreed price of cattle covered by the chattel mortgage that day given, secured by the said cattle, which plaintiff turned over to defendant under the terms of said agreement; that at and prior to said time plaintiff had a mortgage on the said cattle, securing notes then past due, which the maker was unable to pay, and which the cattle in their then condition were insufficient to pay and could not be further carried out without loss to the holder of the cattle and the plaintiff also; that plaintiff knew and was advised that defendant was an experienced cattleman and possessed of sufficient pasturage and means to care for and keep the said cattle so the herd could increase and grow in number and value, the cattle being largely cows, and it was therefore understood and agreed for the mutual benefit and profit of the plaintiff and the defendant that defendant should take the cattle at the price then agreed upon, for which notes were then given secured by chattel mortgage upon said cattle, same being signed by defendant; that the defendant for his profit in the care and keep of the cattle was to have the profits to be derived from the cattle after paying off out of the sale of the cattle to be made from time to time, this including the sale of the calves and increase, the said indebtedness and interest thereon, at a rate of not more than 8 per cent. per annum, and the plaintiff agreed and it was understood that the arrangements were to continue until the cattle, by growth and otherwise, were sufficient to pay said debt and defendant for the care and keep of the same, he to have all profits above said debt and interest.

"(2) Defendant further shows that it was understood and agreed as a part of the same transaction that the plaintiff would have to float the notes given, and that in order to do so it would be necessary to renew the notes each six months, and such renewals by the defendant should continue until the agreement was consummated and the object for which the same was entered into was obtained. Thus by the terms of said agreement the enterprise was entered into whereby the defendant was to take the cattle, as hereinbefore stated, and the notes so given and the mortgage securing the same were to be discharged out of the profits of the business, which agreement, although defendant has fully complied with and expended large sums of money to carry out, the plaintiff has broken, to defendant's damage as hereinafter charged. Defendant shows that he entered into said agreement in good faith, believing that plaintiff could and would carry the same out according to its purpose and intent; that he has performed his full obligations thereunder and has been delinquent in no particular, and that he is still able, willing, and ready to carry out his part of the agreement; that the cattle and the increase have been shipped and applied upon said agreement from time to time according to the terms of said agreement; that there is still on hand of said cattle and in the possession of defendant about 400 head of said cattle, which are being cared for by defendant according to the terms of said agreement and at his own expense; that he has expended in the care and keep of said cattle the sum of at least $12,000; that he would not have entered into said agreement and expended said money or executed said notes and mortgages but for the said promise and agreement of plaintiff, which he, in good faith, relied upon

and believed plaintiff would carry out; that he has received nothing of value upon said contract and agreement, and has nothing of value except the cattle now on hand, which are subject to said agreement, the remainder of the original stock, and the increase, having been sold thereunder and applied upon said notes; that the breach of the said contract by plaintiff is vital to its existence and goes to the very root of the contract, and its failure and refusal to carry out the same has destroyed its purpose and object, and defendant now here tenders to said plaintiff the said cattle now on hand, the plaintiff having breached said contract, and here reconvenes and sues the plaintiff for his damages, in the sum of $12,000, the amount of money he has expended in the care and keep of said catle, and the further sum of $2,000, the value of his time and attention actually expended, and further asks that said notes and mortgages and deed of trust be canceled and held for naught, for all of which the defendant will ever pray, etc. * * *

"(4) Defendant further shows that after said contract and agreement had been entered into, and while he in good faith as hereinbefore stated, was carrying out his part of the same, and expending great sums of money, as well as time and attention thereon, as plaintiff intended he should do, and as he had agreed to do, the plaintiff informed him that the price of cattle had declined and that it was hard to float cattle paper, and that in order to be able to float said paper it would be necessary to further secure the same, which statements he relied upon and believed, and in order only to assist the plaintiff to carry out its part of said agreement, at the special instance and request of the plaintiff, and for no other purpose or consideration, and without in any wise changing or modifying said original agreement, defendant was induced to and did execute the deed of trust mentioned in said original petition, believing that the said plaintiff intended to carry out its said contract. However, defendant shows that as soon as or very soon thereafter plaintiff, feeling by reason of said additional security that it was fully secured and by reason of said additional security escape loss and cause defendant to bear all loss in said mutual agreement, said cattle not then being worth the amount of the so-called debt, repudiated said contract and demanded that defendant bear all loss, and at the maturity of said last renewal made according to the terms of said agreement said matter be closed, and that defendant sell said cattle and also his land put up as additional security to hold it harmless; that he believes, and here so charges to be true, that the representations made to induce defendant to give said deed of trust as additional security were falsely made for the sole and only purpose of holding itself harmless and with no intention of carrying out the same, but, upon the contrary, of breaching said contract as soon thereafter as possible; that by reason of said statements and representations, which he relied upon and believed, and but for which he would not have executed said deed of trust, he was induced to make the same; and that by reason of such said deed of trust is wholly void and without consideration and should be canceled and held for naught, for which defendant also prays and for costs of suit."

The answer is duly verified by the appellant. It will be observed that the dates of the notes, mortgage, and deed of trust are not set out in the pleading, but it is a fact, as shown by the record, that the original notes, executed by appellant, as well as the renewal notes which are in suit, were all executed subsequent to the date when the Uniform Negotiable Instruments Act became effective. Acts 36th Leg. p. 190, Gen. Laws of Texas 1919. It is provided by article 1, § 16, of that act as follows:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party, other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making * * * or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument."

See, also, Id. § 58.

The foregoing is a verbatim copy of section 16 of the Uniform Negotiable Instruments Law as originally framed by the commission which promulgated it, and in that form it has been incorporated into the statutes by a majority of the states which have adopted it.

Before it became a part of the statutes of Texas and by its provisions repealing all laws inconsistent with it, and was thereby substituted for the law merchant, our courts, in actions between the original parties and those not bona fide holders for value, had gone far toward limiting and modifying the effect of the parol evidence rule and declaring exceptions to it in its relation to negotiable instruments generally. Thus it has been held that in an action upon a note executed as part of the consideration for a conveyance the grantee may set up as an affirmative defense or counterclaim the grantor's failure to furnish him with goats in accordance with a contemporaneous parol agreement, it appearing that the grantee was without funds, and that the maker agreed to supply him with stock so that he might be enabled to pay for the land, the court saying:

"No rule of law is better settled than that which prohibits the introduction of parol evidence to vary the terms of a contract in writing; but the exceptions to the rule are equally well recognized, and perhaps emphasized by the certainty of the general principle. One of the exceptions to the rule, which is as well established as the rule itself, is that parol evidence is admissible to show the real consideration of a deed, and in actions between the par-

ties the recitals in the deed with reference to the consideration that are not conclusive. [Citing authorities.] It remains then only to determine on the questions of the general demurrer whether the matter set up in appellant's amended answer falls within this exception. We think it does." Reid v. Ragland, 156 S. W. 920.

The rule is announced in this state, practically without dissent, that the real consideration of a contract, where the recital of the consideration is not. contractual in form, may be shown by parol, as the consideration recited therein does not form a part of the contract. Taylor v. Merrill, 64 Tex. 494; Womack v. Wamble, 7 Tex. Civ. App. 273, 27 S. W. 154. And the rule has been extended to include negotiable instruments. Branch v. Howard, 4 Tex. Civ. App. 271, 23 S. W. 478; Eikel v. Randolph, 6. Tex. Civ. App. 421, 25 S. W. 62. In the following cases parol evidence was admitted to show the real nature of the. consideration understood between the parties, and not expressed, at the time the notes were executed: Branch v. Howard, 4 Tex. Civ. App. 271, 23 S. W. 478; Henry v. Sansom, 36 S. W. 123; Watson v. Boswell, 25 Tex. Civ. App. 379, 61 S. W. 407. In order to show the nature of the transaction, parol evidence is admissible, even though the writing is contradicted and the conversation attending the negotiation may be looked to to show the nature of the contemplated transaction. Lemp' v. Armengol, 86 Tex. 690, 26 S. W. 941; Glenn v. Mathews, 44 Tex. 400, 405. The rule excluding parol evidence is declared by many decisions in this state to have no application when collateral undertakings are sought to be established by oral testimony. Peel v. Giesen, 21 Tex. Civ. App. 334, 51 S. W. 44; Belcher v. Mulhall, 57 Tex. 17, 21; Patton v. Rucker, 29 Tex. 402. In Preston v. Breedlove, 36 Tex. 96, it is held that parol evidence is admissible to prove a verbal contract collateral to and contemporaneous with a written contract, though it refer to the same subject-matter and may affect the rights of the parties as expressed in the writings, and it is also held that such evidence is admissible to show an independent agreement made as an inducement to a written contract, although the writing contains no reference to such agreement. Downey v. Hatter, 48 S. W. 32.

The rule is clearly established in this state by a long line of decisions that a trust which attaches to a promissory note may be established by parol evidence, and was enforced in Thompson v. Caruthers, 92 Tex. 530, 50 S. W. 331. That was a case in which money intended by the donor as a gift to a minor grandchild was placed by the donor in the hand of the minor's mother, with the understanding that the donor should receive the interest on the same during her life, the sum being evidenced by the mother's note. Upon the death of the grandmother, in a suit by the heirs on the note, the minors intervened, claiming the fund, and the Supreme Court permitted the trust to be established orally. In an action on a note, given in pursuance of an oral contract between plaintiff and defendant, in virtue of which defendant acquired plaintiff's stock of goods, together with plaintiff's oral promise to assure him credit and become his partner and· contribute one of the notes, defendant was permitted to prove the facts of the agreement. Henry v. McCardell, 15 Tex. Civ. App. 497, 40 S. W. 172. Where a check was given as part of a more comprehensive transaction, not expressed in writing, all the terms of the transaction of which the check was a part, and providing for the discharge of the check, were held to be provable by parol. Rahe v. Yett, 164 S. W. 30. Allen v. Herrick Hdwe. Co., 55 Tex. Civ. App. 249, 118 S. W. 1157, is a suit upon a note in which it was declared that equity would allow the maker to show that the note was not intended as a full settlement between the parties, but that it was agreed at the time of its execution that there would be a further settlement in which the maker should have the benefit of credits claimed by him. In Hansen v. Yturria, 48 S. W. 795, it was held that parol testimony is admissible to show that contemporaneously with the execution of a note and as a part of the transaction out of which it arose the parties agreed that the payee should furnish the maker with funds to embark in a business enterprise, and that the note was to be paid out of the profits thereof, and that the payee had breached the agreement. The transferee of the vendor's lien notes with notice sought to foreclose the vendor's lien and alleged a want of consideration for the transfer from plaintiff to his sons, and that the transfer was for a specific purpose known to the defendants, alleging that the notes had been used for a different purpose. It was held that parol evidence that plaintiff's sons were not in fact owners thereof was admissible, even though the evidence contradicted the indorsement. Givens v. Carter, 146 S. W. 623. ·Where a note was given for bank stock, in a suit by the payee to recover, parol evidence was admitted to show that the note was delivered conditionally on the payee's not electing to retain his stock within 30 days, and that he had so· elected. Hawkins v. Johnson, 181 S. W. 563. This court held in Clayton v. Western National Paper Co., 146 S. W. 695, that the defendant could prove that a part of the consideration for the note sued on, which was given for the price of goods sold, consisted of a parol agreement by the payee to take back certain unsalable goods and credit their invoice price on the note. Again, in Watson v. Rice, 166 S. W. 106, this court held that parol evidence was admissible to show the real consideration for a contract, in virtue of

which Rice executed and delivered to Watson his notes, which were afterwards renewed and consolidated by the execution of one note for $1,000, upon representations by the payee that in the event Rice was not satisfied with the transaction at the time the first note matured, defendant would repay plaintiff the amount of a cash payment, with interest, and return the notes. The renewal note, in the sum of $1,000, had been negotiated by Watson and paid by Rice. The suit was to recover the amount so paid. In support of the holding 2 Elliott on Contracts, §§ 1629, 1633, and 1636 were quoted in part as follows:

" 'The question usually is as to whether the parol evidence sought to be introduced contradicts or alters the written contract or leaves it to stand unchanged and simply tends to establish an additional collateral agreement. It is often difficult to determine this question, and there is much conflict among the authorities. The form in which the question arises may sometimes be an important factor in determining the admissibility of the evidence, and, referring to leases, it is said that a part of the conflict in the decisions may be explained if we observe that it is one question whether such a collateral agreement may be proved for the purpose of sustaining an action for its breach and a different question whether it may be proved for the' purpose of defeating an action on the written lease.' Another writer suggests the following test for determining whether a parol agreement is collaterally admissible: If it interferes with the writing it cannot be proved. If, on the other hand, it relates to a matter beyond the scope of the written contract, the writing does not affect it. In each case it must be determined from the character of the writing and from the circumstances of the case whether the parol agreement offered to be proved was in regard to a matter which it is reasonable to infer the parties thought settled by the terms of the writing and, if it was, evidence to show it should be excluded. The writing must speak just so far as it is fair to conclude that the parties, acting as reasonable men, and using intelligible language, intended it should speak, and no further. * * *

" 'There is also a class of cases in which it is held that parol evidence of a collateral contemporaneous agreement, which assumes the contract as indicated by the writing, and undertakes to deal with some contingency or new relation of the parties in the future that may arise under the written agreement, is admissible.' * * *

" 'The general rule which excludes parol evidence when offered to contradict or vary the terms, provisions, or legal effects of a written instrument is subject to many qualifications. Among these qualifications is one to the effect that conditions relating to conditions precedent may be shown by extrinsic evidence. A party who concedes that the instrument evidencing the contract was placed in possession of the party seeking relief, but claims that the latter took it with the understanding that it was not to go into effect until the happening of some other or further event, and that such event has not transpired, is not considered as one seeking to vary or contradict a written contract, but is one endeavoring to show that no contract between the parties ever in fact came into existence. For this reason evidence of such conditions precedent is held admissible. The cases which so hold merely give recognition to the well-settled rule that an instrument may be delivered by one party to another to take effect on the happening of a contingency, and that, by such collateral agreement, the legal operation of the writing is merely postponed until the happening of the contingency."

The holding is sustained by further citation of the following authorities: Merchants' Nat. Bank v. McAnulty, 31 S. W. 1091; Downey v. Hatter, supra; Pope v. Taliaferro, 51 Tex. Civ. App. 217, 115 S. W. 309; Mfg. Co. v. Powell, 78 Tex. 53, 14 S. W. 245; L. & G. N. Ry. Co. v. Dawson, 62 Tex. 262.

Merchants' National Bank v. McAnulty, supra, is a case in which it was held that parol evidence was admissible to show that a note, though in possession of the payee, was delivered with the understanding that it would not be binding upon the makers unless signed by other persons, and the doctrine there announced has since been reaffirmed in several cases by the courts of this state.

This court held in Texas Life Insurance Co. et al. v. Huntsman et al., 193 S. W. 455, 457, that in an indorsee's action upon a note from premium due on an insurance policy, testimony that the payee insurance agent agreed not to negotiate the note until the policy was delivered could be proven by parol, where the defendant, the maker, sought to recover over against the payees. Baines v. Kohler & Campbell, 201 S. W. 735, was a suit upon promissory notes, in which the defendants alleged that the parties orally agreed that the notes should not become effective unless plaintiff advanced certain credit to one of the defendants. Parol proof of this agreement and that the credit had not been advanced was held to be a good defense, since it did not seek to vary the written notes but only to postpone their effective date. J. I. Case Threshing Machine Co. v. Street et al., 216 S. W. 426, is one of a number of cases in this state in which notes given for the purchase price of machinery delivered to the defendant buyer, upon condition that the notes should not become effective until it had been demonstrated that the machine would work to the defendant's satisfaction, or would comply with the warranty, could not be recovered upon until the verbal conditions and contingencies had been met. In reversing this case upon the first appeal (188 S. W. 725), this court said:

"We gather from the pleadings and the evidence offered it was the contention that the purchase and sale of the engine was not consummated and should not be until after trial, and, if as represented, Street should accept

the engine in writing; and the orders and notes were left with appellee upon that condition. The order, therefore, did not become a binding contract between the parties until the engine was so accepted, and the notes were not obligations binding upon appellants. If the allegations of appellants are true, the contract of sale, as evidenced by the order and notes, never went into effect, and therefore was not the contract of the parties"—citing Wigmore on Evidence, §§ 2408, 2410; Watson v. Rice, supra; Parker v. Naylor, 151 S. W. 1096; National Novelty Importing Co. v. Duncan, 182 S. W. 888.

An indorser of a note, it was held, could prove by parol that the note in effect belonged to a university of which he was the secretary, but was made payable to him, and that his indorsement was merely a transferred title. Texas Baptist University v. Patton, 145 S. W. 1063. To the same effect is Erwin v. E. I. Dupont de Nemours Powder Co., 156 S. W. 1097. See, also, Williams v. Walter A. Wood, M. & R. M. Co., 154 S. W. 366.

In an action on a note by an assignee, who acquired it after maturity, it was held that a witness could testify that he signed the note under an agreement with the payee that he should not be liable, and that the latter would indemnify him against loss. Citizens' National Bank v. Cammer, 86 S. W. 625. And in an action on a note against a surety an answer alleging that for a consideration the plaintiff had agreed with the person for whose benefit the note was made that such person might pay it in work, and that it had been so paid, was not objectionable as contradicting the terms of the note. Chapman v. Witherspoon, 192 S. W. 281, is a case in which the parol evidence rule was invoked to prevent proof by parol of an agreement whereby a broker should have commissions out of a certain note executed to the owner, and where it was alleged that his commissions should be paid when the note given for the land was satisfied. After quoting the rule from 5 Chamberlayne, Modern Law Ev. 4930, § 3553, Rasbury, Justice, said:

"The question then is: Is the agreement claimed by appellee inconsistent with the writing (the notes), and is it apparent that the writing (the notes) was not intended as a complete embodiment of the undertaking? We believe the parol agreement to be entirely consistent with the written agreement. Appellant testified that the charge of $500 made for commissions or for financing the trade between appellee and Witherspoon was based largely on the fact that the notes which he had agreed to carry would be hard to negotiate, due to the fact that they covered a period of eight or ten years, and as a consequence a one-way commission would not be satisfactory. He also testified that he would refund $100 of the $500 if appellee would 'cash' the notes. It thus appears practically without dispute that the sum to be paid was based largely upon the fact that

appellant would be compelled to carry the notes for so long a period, and appellant's funds would accordingly be beyond his control for other purposes. Such being true, it was, it occurs to us, entirely consistent for the parties to agree collaterally and independently that in the event appellee paid off the notes in a reasonable time a portion of the charge for commissions and financing the trade should be refunded. We also conclude that it is apparent from the writing that it is not a complete embodiment of the agreement, or, stated in another way, that it does not presuppose an exclusion of the collateral or independent agreement. The writing is but a formal promissory note, and because of its character and brevity essentially fails to import that all stipulations between the parties with reference to the subject-matter were intended to be expressed by the note, and because, further, the omission to express in the note the other agreement does not indicate that the agreement was not made, particularly so in view of the fact that the right to receive the $350 was dependent upon the payment of the note in a reasonable time."

Where a note and deed of trust made no provision concerning 'the sale of certain land in its entirety, or the payment of the note before expiration of the five-year term, parol testimony was admissible to prove an agreement whereby a portion of the principal represented interest, and that upon payment thereof before expiration of such period the payee would refund the interest that had not been exhausted, and was admitted upon the ground that such testimony was within the exception to the parol evidence rule that where the writing was not intended as a complete embodiment of the undertaking the understanding could be shown. Davidson v. Guaranty Life Insurance Co., 220 S. W. 582.

In the case of Miller v. Murphy, 206 S. W. 968, O. A. Murphy gave his negotiable note to Miller, and as a plea of failure of consideration alleged that it was given for five shares of capital stock in a mercantile company; that the corporation was insolvent and the stock worthless at the time of the execution and delivery of the note. He further pleaded a contemporaneous parol agreement to the effect that, if the corporation should afterwards prove to be insolvent, plaintiff would cancel the note and never demand payment thereof. He further alleged insolvency of the corporation, and the court held that proof of the contemporaneous parol agreement was admissible.

Davis v. Sisk, 49 Tex. Civ. App. 193, 108 S. W. 472, is one of several cases in this state declaring the rule that, where the original contract was verbal and entire, and a part only has been reduced to writing, that the unwritten part may be shown by parol. The transaction was one involving a transfer of real estate, and the parol proof that the transfer of a stock of goods was also em-

braced in the contract was permitted. Amongst other cases supporting the holding the court cites Thomas v. Hammond, 47 Tex. 42, in which it was held that a parol agreement by which certain purchase-money notes were to be deposited with an attorney, and from the proceeds of such notes outstanding liens against the land conveyed to the maker would be taken up and discharged, could be shown in defense of an action upon the notes.

In the first count of the answer copied above it is shown that the cattle taken by appellant were formerly owned by a third party, who was indebted to appellee for them; that on account of the decline in the price of cattle their value was not equal to the debt which the appellees held against the then owner of them, and at the request of appellees appellant took the cattle over from the former owner at an agreed price and executed a mortgage upon them to secure the notes given for the agreed price. According to the statements in this count, the appellee desired that appellant should take them on account of the latter's experience and the further fact that he posessed sufficient pasturage and means to keep and care for them. Indulging every reasonable presumption in favor of the sufficiency of the answer, as against a general demurrer, we think it appears from the first count that defendant should furnish pasturage and give his time and attention in managing the herd, and should continue to do so until the cattle, by growth and increase in numbers and in price, were sufficient to pay the debt with 8 per cent. interest per annum, and that appellant should have as his compensation all of the original herd and the increase over and above the amount of the debt and interest. It will be seen that the arrangements, according to the allegations of the first count, were to continue for an indefinite time; that is, until the increase of the herd and in the value and price of cattle upon the market would enable the appellant to pay the debt and interest. It is alleged in the second count that it was understood that plaintiff would have to "float the notes" mentioned in the first count. The meaning of the term "float" as here used is not clear, but from the further allegation that it was understood that it would be necessary to renew the notes each six months, and that such renewal should continue until the agreement was consummated and the object for which it was entered into was obtained, the writer presumes that by the word "float" is meant that appellee would have to use the notes as collateral security in borrowing money, since to hold that the word "float" means to negotiate would, of course, cut off the right of the parties to renew them every six months, as agreed. In the third count it is shown that the appellant complied with the agreement by shipping and selling some of the cattle and the increase and applied the proceeds to the payment of the debt; that he has expended in care and money $12,000 under the agreement. No fraud or mistake is alleged in the formation of the original contract. In the fourth count of the answer it is alleged that subsequently to the formation of the contract the appellees fraudulently informed appellant that the price of cattle had declined, that it was hard to float cattle paper, and that in order to float the paper it would be necessary to further secure the same, and at the request of appellee appellant executed the deed of trust mentioned in the original petition, as further security for the notes sued upon, and that the representations were falsely made, for the sole and only purpose of holding the appellee harmless and with no intention of carrying out the agreement.

It requires no citation of authorities to support the proposition that, if the deed of trust upon appellant's land was secured under the subsequent agreement by fraud or deceit, parol evidence is admissible under such allegation to establish the fraud, and when proven would entitle appellant at least to the cancellation of the lien upon his land. The difficulty lies in the attack made by the pleading upon the contract as originally executed and as to which there is no allegation of fraud, accident or mistake. In nearly all of the cases hereinbefore cited it will be found that a negotiable note or notes constituted an integral part of the transaction out of which the suit arose. While no effort has been made to collate the cases in which the parol evidence rule has been discussed in its relation to contracts generally (and the writer does not claim that the cases above reviewed are all of the decisions in this state in which the courts have applied the rule, as given) they present all of the exceptions and qualifications announced by our courts under the rule. Since the judgment must be reversed because, as heretofore stated, the entire court thinks the answer in the fourth count shows facts entitling appellant to at least cancel the deed of trust, admitting his allegation of fraud to be true, the writer desires to express his views upon the other phase of the case. Construing the pleading in accordance with district court Rule No. 17 (142 S. W. xviii), I think the allegations of the first three counts are sufficient to show that part of the consideration for the execution of the notes and chattel mortgage was the agreement on the part of appellee that appellant should have for his services and expenses in managing the cattle the profits resulting from 'carrying' out the contract. This consideration, of course, would be defeated if appellee were permitted to collect the notes at maturity, as stipulated in them. Since the notes and chattel mortgage are only a part of the contract under which appellant acquired the cattle, and since the notes

were delivered with the mutual intent of the parties that they should not be negotiated, but should be redeemed by appellant and renewed each six months, I believe the case, as alleged, falls within several of the exceptions illustrated by the Texas cases hereinbefore reviewed. Of course, if the notes had been transferred to a bona fide ·purchaser for value, a different question would have been presented. We may presume from the allegations that appellees had floated the original notes, and that when they were renewed it was in accordance with the original agreement and they had been redeemed for that purpose. This would show a practical construction of the contract. If, however, I am in error, in holding that appellant was entitled to prove the allegations in his answer, under the law as it existed in this state, prior to the enactment of the Uniform Negotiable Instruments Law, the sixteenth section of which is quoted above, I think it is clear that the contemporaneous parol agreement is provable under that act. Dan. Neg. Inst. (6th Ed.) § 68a, discusses the effect of the Negotiable Instruments Law as it relates to the delivery to the payee of a negotiable note upon condition as follows:

"The conflict of authority on the question whether a bill or note can be shown to have been delivered upon a condition precedent is settled in those states which have adopted the statute, whereunder the rule is recognized that a person may manually deliver an instrument, though it be in the form of commercial paper, to another, on its face containing a binding obligation in præsenti of such person to such other, with a contemporaneous verbal agreement that it shall not take effect until the happening of some specified event, and that the paper as between the parties will have no validity as a binding contract till the condition shall have been satisfied."

The rule is further stated in L. R. A. 1917C, 314, as follows:

"That a bill or note may be shown to have been delivered upon condition is settled in the Negotiable Instruments Law. This act provides that 'as between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting, or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the' purpose of transferring the property in the instrument. It is accordingly held that parol evidence is admissible to show that a bill or note, regular in form, was manually delivered to the payee upon the condition that it was to become an enforceable obligation only upon the happening of a certain event, or was to be paid only upon the happening of a certain event. Parol evidence has been held admissible where a note was given in payment of stock to show an agreement that it was to be carried and renewed by the payee for a stated time, and if at the end of that time the stock had not realized enough to pay the purchase price, and the maker did not want it, the payee was to take it off his hands and cancel the note."

Paulson v. Boyd, 137 Wis. 241, 118 N. W. 841, is the case last referred to in the above note, and in it the court concludes as follows:

"That it was not intended and agreed by them that the note should be a present binding agreement, but that it was delivered to [the payee] upon the condition that if [the maker] paid interest on the sum for [the stated time the payee] was to renew the notes as agreed and if at the expiration of that time the maker did not want the stock the agreement to purchase was to be terminated at [the maker's] election, and the note cancelled."

Quoting further from L. R. A. 1917C, 315, note:

"A surety signing a note on condition that others shall sign it as sureties before delivery by the principal obligor may show this to defeat an action on the note, under the Negotiable Instruments Law. As shown in the preceding paragraphs, parol evidence is held admissible to show a conditional delivery under the Negotiable Instruments Law. It has been expressly held that there is nothing in the law that requires a contract of conditional delivery to be in writing.

"Evidence that the instrument was delivered conditionally does not contradict the writing within the meaning of the parol evidence rule; that rule presupposes the existence of a valid contract. The evidence in question is for the purpose of showing that there is no valid contract betwen the parties because there is no finality of utterance. It has been stated that 'the delivery of an instrument is an essential element to complete the contract written thereon, and of necessity this essential element cannot appear on the face of the instrument.' This general statement is made in a case involving a conditional delivery. It is further stated that the apparent contract written on the instrument is not complete until the delivery thereon is or becomes unconditional. Under the Negotiable Instruments Law a presumption of delivery is stated to arise, but, as between immediate parties, this presumption may be overcome by showing that the delivery was conditional; and, when that is shown, the apparent contract written on the instrument is shown, not to be a complete contract, but one which will be completed if the condition is fulfilled, and which cannot be completed if the condition becomes impossible of fulfillment, Again, it has been stated that such evidence merely postpones the legal operation of the instrument, and does not contradict the writing. In some cases it is stated that the condition goes to the consideration of the instrument."

This note, from which I have quoted so liberally, is supported by a number of authorities, some of which, together with later cases decided in jurisdictions where the Negotiable Instruments Law has been adopted and which I think are analogous to the in-

stant case, will be reviewed later on. Of course, if it be held that the oral agreement alleged by appellant is collateral to the contract, as evidenced by the notes and chattel mortgage, then the authorities are agreed, practically without dissent, that the case is not within the parol evidence rule, but we are not called upon to decide that question and I will not discuss it.

So, if I am mistaken in my conclusion that the notes were executed and delivered upon the contemporaneous parol understanding that appellee was merely to "float," and not transfer them in due course, that they were not to be due at a time certain and at all events according to their recitals, but, as alleged, if not paid at maturity they should be renewed for another term of six months, that they were to be paid only out of the funds arising from the profits of the business, that they alone do not evidence and are not the entire contract, but only a part of it, the remainder resting in parol, that the oral undertaking of appellee to comply with the conditions was a part of the consideration for them, governing the accrual of appellant's liability, and defining the nature and extent thereof, and that these conditions have been broken or have not been met, and that the contingencies expressed in the agreement have not arisen, which matured them all, and that the consideration has failed in whole or in part, are any or all provable in defense under the general law, as announced in the foregoing cases, then I am convinced that the Uniform Negotiable Instruments Law is applicable, and by its express provisions would permit the appellant to prove the "special purpose only" for which they were delivered, and that their delivery to appellee was "not for the purpose of transferring the property in the instrument," which result would necessarily be implied without such proof. In brief, I believe that the statute means what it says. I gather from Brannan's Negotiable Instruments Law (3d Ed.) that the act has been incorporated in the following states and territories, where the numbering of the sections is the same as that of the commissioner's draft: Alabama Laws 1907, p. 660; chapter 115, Code 1907; Laws 1909, No. 146. The act as originally adopted was numbered in the statute as articles 4958 to 5143, inclusive. However, the act of 1909 corrected some errors in the act of 1907, in which last act the sections are numbered as in the commissioner's draft of the law. In Alaska it is cited Laws 1913, c. 64; in Iowa, Laws 1902, c. 130 (Code Supp. 1913, §§ 3060a1–3060a198); Maine, Laws 1917, c. 257; Mississippi, Laws 1916, c. 244 (also Hemingway's Annotated Code 1917, pp. 1355–1385); New Jersey, Laws 1902, c. 184 (Comp. St. 1911, vol. 3, p. 3732); New Mexico, Laws 1907, c. 83; Pennsylvania, Laws 1901, No. 162 (Laws of 1909, No. 169); South Carolina, Laws 1914, c. 396; Vermont,

Laws 1912, No. 99; Virginia, Laws 1898, c. 866 (Laws 1906, c. 219; Code 1904, c. 133a, § 2841a). In the following states section 16, quoted above, appears in the statutes of said states under the following article numbers: Arizona, 4161; Arkansas, 6956; California, 3097; Colorado, 5066; Connecticut, 4374; Delaware, 2660; District of Columbia, 1320; Florida, 2950; Idaho, 3473; Illinois, 34; Indiana, 9089p; Kansas, 6543; Kentucky, 16; Louisiana, 455; Maryland, 35; Massachusetts 33; Michigan, 18; Minnesota, 5828; Missouri, 9987; Montana, 5864; Nebraska, 5334; Nevada, 2563; New Hampshire, 16; New York, 35; North Carolina, 2166; North Dakota, 6901; Ohio, 8121; Oklahoma, 4066; Oregon, 5849; Rhode Island, 22; South Dakota, 16; Tennessee, 3516a24; Utah, 1568; Washington, 3407; West Virginia, 4187; Wisconsin, 1675—16; Wyoming, 3174. It will be seen that a considerable majority of the states in the Union have adopted the law. A few of them, however, have made some slight changes in the wording of the original draft, but we have not found that any such changes are made in the language of section 16 in so far as it relates to the issue here involved. Investigation shows that a few of the states, notwithstanding the plain and unequivocal verbiage of the section, have, in extreme cases, applied the parol evidence rule as it formerly existed, but in a great majority of the jurisdictions the statute has been given the effect indicated in the foregoing note from L. R. A. 1917C, and as announced by Mr. Daniel in the section quoted. In construing this section I am constrained to adhere to the construction and interpretation heretofore given it in states which have adopted it and to follow that application of it which is sustained by the great weight of authority. I will now review briefly a few of the cases which I find to have been decided in those jurisdictions where the Negotiable Instruments Law has been adopted.

The case of Jenkins v. National Bank of Baltimore, 134 Md. 85, 106 Atl. 174, is a suit by a bank against the appellant as indorser of certain notes after default in payment at their maturity, and the defense sought to be interposed by proffers of parol proof which the trial court rejected was that the appellant, who was president of the Jenkins Provision Company, became an indorser individually upon certain notes of the company, of which these sued on are renewals, and furnished a collateral guaranty thereof by his wife under an agreement with the bank that before accepting the notes for any renewals thereof it would procure also the individual indorsement thereon of J. H. Cromwell, who was interested in the borrowing company, and served as its treasurer, but that, while the first two notes discounted after the agreement were indorsed by both J. H. Cromwell

and the appellant, the bank failed to obtain the indorsement of Mr. Cromwell on subsequent renewal notes, thereby violating the condition upon which the appellant indorsed the notes and agreed to their delivery, and that he did not know of the failure of the bank to have Mr. Cromwell indorse the latter renewals until after the company was placed in the hands of receivers, the renewal notes having in every instance been taken by Mr. Cromwell himself to the bank. This theory of conditional delivery was likewise set forth in a special plea, to which a demurrer was filed and sustained, and by a prayer it was necessarily refused in view of the exclusion of the evidence by which it might have been supported. Judgment was recovered by the bank. The court said:

"The Negotiable Instruments Act provides that as between the immediate parties, or against one not holding in due course, the delivery of a negotiable instrument may be shown to have been conditional. Code, art. 13, § 35."

The Supreme Court of Alabama, in Norwood v. Stinnett, 202 Ala. 349, 80 South. 431, applied the Negotiable Instruments Law, declaring that it permitted parol proof of the conditional delivery of a note. The defendant pleaded that the note upon which the suit was based was delivered to the plaintiff conditionally, with distinct understanding that it was for a special purpose, viz.:

"The plaintiff delivered to defendant two insurance policies for him (defendant) to examine, and determine whether or not he (defendant) would purchase same, and the note upon which this suit is based was delivered as aforesaid, to become effective if defendant, after examining the insurance policy, decided to take or accept said policy, and the defendant avers that before the note became due, and in a reasonable time, he notified the plaintiff that he did not care to purchase or accept the insurance. * * *

"That the note upon which this suit is based was delivered to the plaintiff conditionally and for a special purpose only, viz.: At the time the note was delivered to the plaintiff, he, the plaintiff, delivered to the defendant two insurance policies with the understanding that the defendant examine said policies, and if he decided to take the insurance, the note was to be paid in a certain time, and the defendant avers that, after examining said policies, he decided not to accept said insurance, and so notified the plaintiff within a reasonable time."

He testified in substance:

That he made application for the policy with the agreement that if it was satisfactory he would keep it; that when Norwood came to him to deliver it "he had two policies, one for $1,000 and the other for $2,000, which also had a sick and benefit clause in it. I told him I was not able to take them and pay for them, and he says, 'I will make you able,' and I finally agreed to sign the note and take the policies home and examine them, and after reading them over it was understood and agreed, and I told Mr. Norwood, if the policies were satisfactory, and if I decided to keep the policies, I would pay the note, but, if not, I would return the policies. * * * I saw Mr. Norwood in Bessemer a month or more after I signed the note, and told him I would not take the insurance and wanted my note. The policies were afterwards thrown around the house, and the children played with them until they were lost."

The court sustained the demurrers to the pleading. The note sued on showed an unconditional promise to pay, but, as alleged by defendant, was delivered conditionally. Upon this point the court said:

"The plaintiff was, of course, entitled to recover the amount evidenced by the notes, unless the defendant established the facts of special defense set up in one of his special pleas.

"A note may be delivered to the payee with the conditional reservation of liability, which, as between the parties, is effective. Code, § 4973; Bank of Tallassee v. Jordan, 75 South. 930. * * * If there was error in sustaining the demurrer to plaintiff's special replications, it was without prejudice, since he actually had the benefit of proof of them under the general issue. In this regard it will suffice to say that a replication setting up defendant's obligation to return the policies to plaintiff if they were rejected, and his failure to do so, or to offer to do so, contemporaneously therewith, would be a good answer to the special pleas."

The defendant's answer in Martineau v. Hanson, 47 Utah, 549, 155 Pac. 432, is in part:

"That the promissory note sued on 'was delivered to plaintiff upon the express condition and understanding between the said defendant and the plaintiff that the said note was not to be paid until the said J. H. Earle should pay to the defendant the aforesaid sum of $5,500; that the plaintiff received the said note from said defendant, and at the time of its receipt agreed to the condition upon which the same was delivered as stated, and agreed with the defendant that the said note should not become due until the said John Earle should make the payment of $5,500, which was due on or before the 1st day of November, A. D. 1911, and that said plaintiff further agreed that said note * * * was never to be paid by the defendant unless the said John H. Earle should pay the sum of $5,500;' that said Earle never paid the $5,500, or any part thereof."

In disposing of the issue raised by this part of the answer the court said:

"The first assignment relates to the ruling of the court by which it excluded defendant's parol evidence offered by him for the purpose of proving the agreement between the parties set forth in the answer, namely, that the note was delivered upon the condition therein stated. Counsel for the defendant very forcibly insists that the court erred in excluding the proffered parol evidence. The plea in the answer and the evidence offered in support thereof were based upon Comp. Laws 1907, § 1568, which, so far

as material here, reads as follows: 'Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between the immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting, or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, for a special purpose only, and not for the purpose of transferring the property in the instrument.' * * *

"The section in question is part of the act relating to negotiable instruments, and is found, with some slight changes, in the statutes of the various states which have adopted said act. The statute adopted by the state of Wisconsin is, word for word, like our own, and the Supreme Court of that state, in passing upon a similar question to that presented here, in the case of Hodge v. Smith, 130 Wis. 333, 110 N. W. 195, says: 'It is familiar law, notwithstanding some conflict in the authorities, that a person may manually deliver an instrument, though it be in the form of commercial paper, to another, on its face containing a binding obligation in præsenti of such person to such other, with a contemporaneous verbal agreement that it shall not take effect until the happening of some specified event, and that the paper as between the parties will have no validity as a binding contract until the condition shall have been satisfied, and that proof of such condition does not violate the rule that a written instrument cannot be varied by a contemporaneous parol agreement; that such evidence only goes to show that the instrument never had vitality as a contract.' To the same effect are the following cases: Hill v. Hall, 191 Mass. 265, 77 N. E. 831; McFarland v. Sikes, 54 Conn. 250, 7 Atl. 408, 1 Am. St. Rep. 111; Burke v. Dulaney, 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698; Howell v. Ware, 175 Fed. 742, 99 C. C. A. 318; 1 Daniel, Negotiable Inst., § 68a; Brannan's Negotiable Inst. Law, § 16, and notes.

"Counsel for plaintiff contends, however, and it seems the court agreed with him, that the effect of the proffered evidence merely went 'to show that the note in suit was to be paid out of the particular fund,' and that parol evidence was not admissible to establish that fact. To sustain that contention, the following cases are cited: Gorrell v. Home Life, etc., Co., 63 Fed. 371, 11 C. C. A. 240; National Bank v. Foote, 12 Utah, 157, 42 Pac. 205; Underwood v. Simonds, 12 Metc. (Mass.) 275; Clanin v. Easterly, etc., Co., 118 Ind. 372, 21 N. E. 35, 3 L. R. A. 863; Stewart v. Anderson, 59 Ind. 375; and Central Sav. Bank v. O'Connor, 132 Mich. 578, 94 N. W. 11, 102 Am. St. Rep. 433. A mere cursory reading of the foregoing cases will disclose that the decisions cited by plaintiff's counsel, with possibly two exceptions, have no controlling influence upon the question raised by defendant's counsel; and, if we were to follow literally the two cases to which we have referred, we would have to repeal section 1568, supra, by judicial edict, and would be required to overrule all the cases we have before cited.

"While the fact that the note in question was delivered only upon the condition that it should not become a completed or enforceable contract unless the purchaser of the lands in question paid the sum stated is not as directly pleaded as it might have been, yet it seems clear to us that the condition is sufficiently set forth, and that, as pleaded, it constituted a condition precedent to the right of recovery on the note, and one which the parties could legally agree upon.

"An agent who is authorized by his principal to sell the latter's lands certainly may agree that the payment of his commission, or any part of it, shall be dependent upon the condition that the purchaser shall pay to the principal either a specific part or all of the purchase price, and that in case the purchaser shall fail or refuse to do so without the fault or connivance of the principal, the agent's commission shall be forfeited. Such an agreement is certainly not against any positive law nor contrary to public policy.

"If, therefore, the principal executes his promissory note evidencing the agent's commission, they may undoubtedly agree that the same is delivered upon the condition that it shall not be an enforceable contract unless and until the condition is fulfilled. That such a condition may be proved by parol as between the parties to the instrument the decisions we have referred to leave no room for doubt, and it seems to us that our statute, to which we have referred, expressly so provides."

It is held in Re Marine, 78 Misc. Rep. 707, 140 N. Y. Supp. 231, that a certificate of deposit in a bank is a promissory note with all its attributes and is of the class of instruments of which Negotiable Instruments Law declares that the delivery, either by the party making or indorsing them, may be shown to have been conditional, or for a special purpose, and not for the purpose of transferring the property therein. That was a case in which the certificate was indorsed by one to a savings bank and received by it with the mutual understanding that the paper was put into possession of the bank for the special purpose of collection, and not for the purpose of transferring the property in the instrument. · Afterward the party depositing the certificate died, and in her will she provided as follows:

"I give and bequeath to Charles H. Schambacher the sum of five hundred dollars, payable exclusively out of any funds I may have on deposit in any bank in Friendship, N. Y."

The savings bank indorsed the certificate and delivered it to another bank, and, upon being notified that it had been paid, opened an account in the name of Mary Cruikshank, in trust for Eva Maude Marine, citing the case of Bank of America v. Waydell, 187 N. Y. 115, 79 N. E. 857. The court, by order, enforced the mutual understanding of the parties.

In the case of Sayre v. Leonard, 57 Colo. 716, 140 Pac. 196, the defendant admitted the execution of the note sued upon, but alleged

that it was delivered to the plaintiff conditionally and was to become binding only upon the happening of a certain possible future event, which did not occur; the condition being that, if one Wingo, a silent owner, with Leonard in a certain leasing partnership, in which Sayre also had an interest, should repudiate the transfer of their holdings therein, which Leonard undertook to make to Sayre without consulting Wingo, then the note should become obligatory as representing Leonard's share of the expense of operating the lease, but that, if Wingo should ratify and prove the transfer, then the note should be canceled and returned. The defendant alleged that Wingo did in fact ratify and approve the transfer before the note matured, that defendant notified Sayre of that fact, and that the note should thereupon have been returned for cancellation as a void instrument, but that Sayre, in violation of the agreement, thereafter took advantage of his possession of the instrument and brought suit to enforce it. The Supreme Court of Colorado said:

"The contention is that the defendant has not pleaded or proved a conditional delivery good in law. The rule of conditional delivery of commercial paper is generally acknowledged. 7 Cyc. 688, and cases cited; Westman v. Krumweide, 30 Minn. 313, 15 N. W. 255; McFarland v. Sikes, 54 Conn. 250, 7 Atl. 408, 1 Am. St. Rep. 111; Benton v. Martin, 52 N. Y. 570; Ewell et al. v. Turney, 39 Wash. 615, 81 Pac. 1047; Watkins v. Bowers, 119 Mass. 383. Moreover, section 16 of the Negotiable Instrument Law (section 4479, R. S. 1908) contains a specific provision on conditional delivery in the following language: [Here section 16 of the law as it is adopted in this state is copied.]

"In a recent case decided by this court, Norman v. McCarthy, 138 Pac. 28, we had under consideration a question closely analogous to the present one, involving the conditional delivery of a check, and upon that proposition, among other things, this was said: 'Now the action on the check in the present instance was between the immediate parties, the payee and the drawer, and the further answer alleged that the check was delivered to the payee upon the condition that it was to be paid only in the event that it was determined that the drawer was not entitled to hold the property as against the attachment, which property he kept in his possession, and it was further alleged in effect that the course of events in the attachment suit was such that the drawer was entitled to retain the property, and that the condition upon which the delivery of the check was to become absolute was not fulfilled and could not be. This conditional delivery alleged was certainly, within the contemplation of the statute, one which may be shown as between immediate parties, and the further allegations showed that the delivery required by the statute to complete the contract expressed on the check was never made, and on that account the check was not a completed contract. The further answer, therefore, was sufficient to constitute a defense.'

"So here the action on the note is between the immediate parties, the payee and drawer, and the further answer alleges that the note was delivered upon the condition that it was to become effective only if Wingo declined to ratify the transfer of his interest in the leasing partnership, which Leonard had undertaken to make to Sayre. The sole matter then is whether the delivery of the note was attended by a condition which, if fulfilled, would defeat its enforcement. That the allegations of the further answer, if established by competent proof, constituted a complete defense, such as the statute contemplates, seems certain. Whether the note was so conditionally delivered became purely a question of fact. There was abundant testimony to support the allegation of this defense, and, although there was contrary evidence, the specific finding of the court that such was the character of the delivery is controlling upon review."

It appears that in the case of First National Bank v. Miller et al. (N. D.) 179 N. W. 997, the plaintiff brought suit upon a $800 promissory note against Herbert Miller as maker and Ella Miller, Earl H. Miller, and Geo. Thompson as guarantors. It appears that Earl H. Miller was confined in the county jail upon a criminal charge, and it was agreed that when bail was exonerated the note would be released and returned to the indorsers. The guarantors alleged the conditional delivery of the note and also that it was agreed by plaintiff and them and Allen Miller and William Miller, when said note was indorsed, that the plaintiff would make no loans to defendant Herbert Miller on account of said note, or advance to him any money or pay any money to any of his creditors, or to itself on account of the note, that none of the indorsers would assume any liability for any of the debts or obligations of Herbert Miller by indorsing the note, and that the only liability they would assume was to reimburse plaintiff in case it should be required to pay the amount of the bail. The bail was fixed at $2,000 on condition that it be furnished in cash. Part of the cash was furnished by other parties. Herbert Miller gave his check, certified to the bank, for $800, making the total sum of $2,000, the amount of the cash bail fixed. Hunt, as state's attorney, presented the $800 certified check to plaintiff bank for payment, receiving the amount in a cashier's check, payable to him, which was deposited with the clerk of the court until after the trial of Earl H. Miller, who was acquitted and discharged, and his bail, by order of the court, exonerated. Immediately after, while the cashier's check was yet unindorsed by Hunt, the sheriff levied upon it under execution issued on a judgment against Herbert Miller. After quoting the Negotiable Instruments Law, as first above set out, the court said:

"In this case no question of a holder in due course arises, and hence no consideration of that subject is necessary. The defendants have pleaded, in substance, that the note was delivered conditionally, and for a special purpose. That special purpose was the furnishing of cash bail for Earl Miller, and for that purpose, and upon the condition that the note would be returned when the bail was exonerated, the note was delivered to the plaintiff bank.

"It was also a condition that the note or its proceeds were not to be used to pay any of the private debts of Herbert Miller. It was not delivered for that purpose. It was delivered to the bank for the special purpose of procuring the balance of the bail money, which was to be returned, if the bail were exonerated, and the note returned to the maker and the indorsers. This was the true and only purpose of executing and delivering the note.

"It appears the plaintiff bank, being a national bank, was under restrictions of law, relative to its powers and duties, in regard to signing bonds. Perhaps, it may have determined that that restriction would extend to a cash bail bond. Whatever may be the facts in this regard, we think, from the history of the whole case, as presented here under the evidence and circumstances shown by it, that the drawing of the check upon the bank by Herbert Miller for an amount equaling the note was simply a means adopted to procure the balance of the cash bail.

"The character of the transaction was not changed in the least by the state's attorney cashing the certified check which Herbert Miller gave him, and receiving instead thereof a cashier's check from the plaintiff bank. * * *

"The note did not become the property of the bank for any other purpose than the special one, nor was it delivered to and received by it, except under the conditions and special purpose conclusively shown. If money were advanced by it upon the note, it was done for and in accordance with the special purpose to accomplish which the note was delivered. * * *

"The special purpose of giving the note was completed, and there should be no further or different liability on the promissory note than was intended and covered by the special purpose and conditions upon which it was delivered, and we are of the opinion, and it is held, there is none.

"At the very moment the court signed the order defendant's bail was exonerated. The levy of the execution, of the sheriff upon the check payable to the state's attorney was of no effect. It was not the property of Herbert Miller, and hence not subject to levy. The promissory note had become of no value as soon as the defendant's bail was exonerated. The money should have been returned to the bank, as it was intended it should be; and the note returned to the maker and indorsers, thus carrying out the special purpose for which the note was delivered. * * * The statute we have above cited with reference to the right to allege and show that the instrument in question was delivered conditionally and for a special purpose is plain, and the principle is supported in Grebe v. Swords, 28 N. D. 330, 149 N. W. 126, and in First State Bank of Eckman v. Kelly, 30 N. D. 84, 152 N. W. 125, Ann.

Cas. 1917D, 1044. There is no merit in respondent's contention that certain evidence offered by the defendants tendered to vary or contradict the terms of a written instrument. It is clear that the introduction of that evidence was not for the purpose of varying or contradicting the terms, but to show the conditions under which, and the special purpose for which, it was delivered, and that otherwise it never became operative nor of any legal existence as a contract.

"Under the statute we have set forth, the condition and special purpose may be alleged and shown, and that is all the evidence claimed to be inadmissible would tend to show."

In Selma Savings Bank v. Harlan et al., 167 Iowa, 673, 149 N. W. 883, Ann. Cas. 1917A, 1216, the bank sued Harlan as principal, and Hinkle as surety, on a note given in renewal of three others. Hinkle pleaded that the note never took effect and testified that Harlan and wife were to give him an assignment of their interest in an estate if he would become a surety for them on the note; that when he signed it and gave it to the cashier it was with the understanding that it was to become effective when Harlan and wife executed their note to him for the same amount and delivered the assignment agreed upon; that the condition was not complied with, and the court said:

"That a promissory note may be delivered on condition, the observations of which is essential to its validity between the original parties thereto is recognized by section 3060a16, Code Supplement, providing that in such case 'the delivery may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring property in the instrument,' and is in harmony with the decisions of this and other courts. Ware v. Smith, 62 Iowa, 159, 17 N. W. 459; Johnston v. Cole, 102 Iowa, 109, 71 N. W. 195; Niblock v. Sprague, 200 N. Y. 390, 93 N. E. 1105. If the agreement was as testified by Hinkle, there was never any authorized delivery of the note, and it never became binding on the defendant. He is not contending that the contract which the note expressed was changed; his claim is that such contract was never entered into at all, for that the contingencies upon which the note was to be deemed delivered never occurred. Parol evidence of the condition was admissible; for it was not an attempt to vary or contradict the written instrument. Higgins v. Ridgway, 153 N. Y. 130, 47 N. E. 32."

The contemporaneous oral agreement set up as a defense in Smith v. Brown, 50 Utah, 27, 165 Pac. 468, is that long prior to the making of the note the plaintiff had induced the defendant to become a stockholder in a certain corporation which was organized for plaintiff's benefit; that the plaintiff was a subscriber and paid for a certain amount of the capital stock of said corporation, one-half of which was to be issued in the name of the defendant, and the defendant was to manage and conduct the business affairs of

said corporation; that the plaintiff was to be repaid the amount he had advanced for the stock issued to the defendant out of the first profits derived from the business of said corporation, and not otherwise: that the plaintiff had also agreed to advance all further sums of money that might be necessary to carry on said business, if any was necessary; that he afterwards refused to do so unless the note in question was made; that the note was made and delivered to plaintiff as evidence of the amount of money he had advanced for the capital stock issued in the name of the defendant and partly because the plaintiff had refused to advance the money he had promised to advance to carry on the business, and which money the plaintiff continued to refuse to advance unless the note was executed by the defendant, and that after the note was executed plaintiff nevertheless refused to advance any money, to defendant's damage. The court said:

"Under the Negotiable Instruments Act (Laws 1899, c. 83), which is in force in this state, it is settled beyond controversy that as between the original parties it may always be shown that a promissory note was delivered upon condition, or that it was made without consideration, or that the consideration has failed in whole or in part. In 1 Daniel, Neg. Inst. § 68a, the prevailing rule under the Negotiable Instruments Act is stated thus: * * *

"The foregoing doctrine has been followed by this court in the very recent case of Martineau v. Hanson, 155 Pac. 432, and cases there cited. In addition to the cases cited in the foregoing opinion, we especially refer to the following as directly in point under the issues presented in defendant's answer: Oakland Cemetery v. Lakins, 126 Iowa, 121, 101 N. W. 778, 3 Ann. Cas. 559; Paulson v. Boyd, 137 Wis. 241, 118 N. W. 841. In both of the cases last cited defenses in their nature similar to those set up in defendant's answer were held good as between the parties to the notes there in question. See, also, Julius Kessler & Co. v. Perelius, 107 Minn. 224, 119 N. W. 1069, 13 Am. St. Rep. 459, and Union Inv. Co. v. Epley, 164 Wis. 438, 160 N. W. 175."

In Waukee Savings Bank v. Jones, 179 Iowa, 261, 159 N. W. 691, the defendant answered, claiming that the contract between himself and the land company was evidenced partly in writing and partly by a contemporaneous oral contract, and that the parol part of the contract was substantially that the note was delivered upon condition that the defendant would be able to raise money by September 1, 1913, and that he was unable to obtain the money; that the land company negotiated a note to plaintiff in fraud of defendant's rights. After discussing the authorities pro and con bearing upon the right of the defendant to prove the contemporaneous parol agreement, the court said:

"There is nothing in section 3060a16, Code Supp., to sustain appellant's contention that the evidence is incompetent. On the contrary, it provides in part as follows: [Quoting section 16, supra.] It is true, of course, that appellant would be protected if it is an innocent holder in due course without notice. We are of the opinion that the evidence was competent and properly admitted and is a complete defense, unless it be shown that plaintiff is an innocent holder."

The finding of the jury in Harder v. Reinhardt, 162 Wis. 558, 156 N. W. 959, is:

"(1) That it was understood between the parties at the time plaintiff gave the $800 check to defendant that plaintiff was advancing the money on the Bloor contract, and that plaintiff was to look to Bloor and not to defendant for reimbursement; (2) that it was agreed between the parties that the defendant, for the benefit of the plaintiff, should include the $800 claim of plaintiff against Bloor's estate in his mechanic's lien foreclosure suit brought to enforce against the premises his claim for money due for constructing the building for Bloor; (3) that the note in suit was given for the purpose of using it to further recovery of the $800, together with defendant's claim of $1,201, in the mechanic's lien foreclosure suit, and with the understanding between the parties that the note would not be used against the defendant nor the amount thereof demanded from him unless the plaintiff should recover the full $2,001 in the foreclosure suit."

Judgment was rendered for the defendant. The court said:

"Plaintiff objected to any evidence of the facts found by the special verdict, on the ground that it was incompetent, irrelevant, and immaterial and in conflict with the contract, that it was not in writing, and that it tended to contradict the written contract of the parties. The objection made at the beginning of the trial was renewed throughout its course, and the question preserved by appropriate motions and exceptions, and the sole question to be determined on this appeal is whether or not the evidence of the oral agreement made between the parties at the time of the making and delivery of the note was properly received by the trial court."

After quoting section 16 of the Negotiable Instruments Law, and further quoting from Paulson v. Boyd, and Hodge v. Smith, supra, the court said:

"The trial court was clearly right in admitting the evidence concerning the making of the contemporaneous oral contract and within the rule above set forth. The evidence admitted by the trial court did not tend to vary or contradict the written contract, but tended to establish the fact that the note was delivered conditionally and for a special purpose only."

Wilmington Trust Co. v. Morgan, 5 Boyce (Del.) 261, 92 Atl. 988, was a suit upon a note. In defense the allegations were in part as follows:

"That the note sued upon in the above-stated action was issued to evidence the amount of certain advances made by the said the Interna-

tional Radiator Company to the said Henry W. Morgan, prior to the date of the said note, while the said Henry W. Morgan was engaged in the business of said company, and the said note was not 'delivered by the said Morgan for the purpose of transferring the property in the said note to the said the International Radiator Company; that the said advances as evidenced by the said note were expended in furtherance of and on behalf of the company, and that the said note was not delivered for the purpose of giving the effect thereto."

In disposing of the motion to strike out the answer, the court said:

"The affidavit of defense filed in this case is manifestly made within the purview of section 16, c. 191, vol. 26, Laws of Delaware, 404 (the Uniform Act of Negotiable Instruments), respecting the character and purpose of the delivery of a negotiable instrument. The defense relied upon by the affidavit is to the effect that the note sued upon was, in the language of the statute, delivered for a special purpose only, and not for the purpose of transferring the property in the instrument."

The defense was held to be good.

In Rubel v. Honig, 178 App. Div. 53, 164 N. Y. Supp. 219, it is held that under the Negotiable Instruments Law in a suit between the original parties it could be shown by parol evidence that the note was not intended as a binding obligation, but that the father of the payees, being a member of a firm indebted to defendant, delivered to the latter two certificates of deposit in the name of payees, but which the father claimed were his own property, to be held until the .debt was paid, and that the note was thereafter given under an agreement that it was not to take effect as a binding obligation until the payment of the indebtedness. Bank of Cartersville v. Gunter, 4 Ala. App. 539, 58 South. 757; Starr Piano Co. v. Edgar, 31 Ohio Cir. Ct. R. 295; Shive v. Merville, 1 Ohio App. 33; Id., 34 Ohio Cir. Ct. R. 193.

From a review of the foregoing authorities and of the cases cited in Brannan's Negotiable Instruments Law, supra, following section 16 therein, pp. 57–64, inclusive, to which I refer without further discussion, I am of the opinion that the answer in the first three counts presented a good defense, and that Negotiable Instruments Law, § 16, applies to this case and abrogates the parol evidence rule as to the defenses urged herein.

The judgment is reversed, and the cause remanded.

BOYCE, J. [1] I agree to a reversal of the case on the ground that the allegations of the fourth subdivision of the answer set up a good defense to the foreclosure of the deed of trust referred to therein, but I cannot agree that the allegations of the first, second and third subdivisions of the answer are sufficient. A preliminary statement of my understanding of the effect of the state-ments made in the defendant's pleading will be useful in the discussion of the legal principles applicable to the case, as I view it.

[2] It will be noted that it is not expressly stated in the answer that the agreement between the parties other than that evidenced by the notes and mortgage were in parol. However, appellant's counsel, in oral presentation of the case, admitted that the notes and mortgage were the only writings evidencing their agreement, and requested that the case be decided on this theory. So that our opinions are written on this assumption as to the facts. Under the allegations of the answer the notes and chattel mortgage were delivered as a part of the agreement between the plaintiff and defendant, or rather in partial consummation of that agreement. It was their understanding that these very notes, or renewals thereof, were to be paid, and they were thus delivered obligations. The only other part of the agreement that was not consummated by the delivery of the cattle to the defendant and the notes and mortgage to the plaintiff was in reference to the manner and time of the discharge of the obligation, evidenced by the notes, it being the understanding that the defendant was to pay the notes out of the proceeds of the sale of the cattle from time to time, and that the plaintiff, in order to enable the defendant to do this, was to renew the notes every six months until they were so paid. It is not stated that any agreement was made as to the defendant's liability in the event the cattle never paid out the notes, though it may possibly be inferred that the effect of the agreement was that the notes were to be paid only out of proceeds from the sale of the cattle, and that there was otherwise no personal liability on the part of the defendant. I refer to a few of the allegations of the answer. It is stated that it was agreed:

"That the defendant should take the cattle at the price then agreed upon for which notes were then given, secured by a chattel mortgage upon said cattle, the same being signed by the defendant; that the defendant, for his profit in the care and keep of the cattle, was to have the profit to be derived from the cattle after paying off, out of the sales of the cattle to be made from time to time, * * * the said indebtedness and interest thereon."

The pleader, in the second subdivision of the answer, states his own conclusion as to the effect of the agreement.

"Thus, by the terms of said agreement the enterprise was entered into, whereby the defendant was to take the cattle as hereinbefore stated, and the notes so given and the mortgage securing the same were to be discharged out of the profits of the business."

It was further stated that it was understood that the plaintiff would have to "float" (which I understand to mean negotiate) the notes. This latter agreement itself implies

an understanding that the notes represented an agreement or obligation. The whole effect of the allegations as I construe them is to show that it was understood that the notes were delivered obligations, evidencing a part of the agreement between the plaintiff and the defendant; that the other part of the agreement was to the effect that these notes were to be extended from time to time and paid out of the proceeds of the sale of the cattle.

If such be the effect of the allegations of the answer, I cannot escape the conclusion that the oral agreement, with respect to the manner of the payment of the notes, is a contradiction and variance .of the terms of the written part of the agreement, as evidenced by the notes and the chattel mortgage given to secure their payment, and does not come within any of the recognized exceptions to the parol evidence rule] discussed by Judge HALL. The exceptions to the rule so discussed relate to (1) want or failure of consideration; (2) contemporaneous parol agreements; (3) conditional delivery. I will take up the discussion of the case in its relation to the stated exceptions in the above order.

[3] Of course, it has always been competent to defend the enforcement of a note or any other written contract on the ground that it was given without consideration, or that there has been a failure, in whole or in part, of the consideration. If my conclusion as to the effect of the allegations is correct, it follows necessarily that there was an original consideration for the execution of the notes. Do the allegations as to the refusal of the plaintiff to keep his oral agreements as to the payment of the notes state such a failure of consideration as will avail the defendant in this suit? If it were true that a failure to perform a verbal promise that varied or contradicted the terms' of the written contract could be proven as a failure of consideration, then the parol evidence rule would amount to nothing. In the case of Hendrick v. Chase Furniture Co., 186 S. W. 278, where the defendant sought to prove a parol agreement for the renewal of notes, made at the time of their execution, it was said:

"It cannot be said * * * that a contemporaneous oral agreement to extend payment at maturity is a failure of consideration, within the common meaning of that term so as to bring the parol agreement to postpone payment within the statute, and thereby avoid the general rule with reference to contradicting the provisions of written contracts by' parol evidence."

To the same effect, see Crooker v. National Phonograph .Co., 135 S. W. 647, 650 (writ of error denied); Nixon v. First State Bank, 127 S. W. 882; Reid v. Ragland, 156 S. W. 921; Kahn v. Kahn, 94 Tex. 114, 58 S. W. 825; Jones on Evidence, § 468.

For the same reasons, a breach of such an oral agreement will not support an action for damages or afford ground for any character of equitable relief. Commonwealth Trust Co. v. Coveney, 200 Mass. 379, 86 N. E. 895; Hall v. First National Bank, 173 Mass. 16, 53 N. E. 154, 44 L. R. A. 319, 73 Am. St. Rep. 255. In the case first cited it was held that an oral agreement to renew notes from time to time and to require payment only "of such sums as the maker will realize as profits from the sales of his real estate" was inadmissible, either as a defense to a suit on the notes or in support of an action for damages for breach of the oral agreement. I am of the opinion, therefore, that there is no such want or failure of consideration alleged as will avail the defendant in this case.

[4] It is the law that in some cases where the writing is only a part of the agreement, and there was no intention to reduce the entire agreement to writing, then parol evidence to show the entire agreement or collateral contemporaneous agreements made in connection with the writing may be introduced; but the statement of the rule itself is usually coupled with the express qualification that the parol agreements thus sought to be shown must be consistent with, and not contradict, the terms of the written 'part of the agreement, and where such qualification is not expressly stated it is impliedly recognized. Hendrick v. Chase Furniture Co., 186 S. W. 277, and authorities; Crooker v. National Phonograph Co., 135 S. W. 647; Belcher v. Mulhall, 57 Tex. 21; note 43 L. R. A. 456; 10 R. C. L. p. 1038, § 230. This statement of the rule, found in the reference to R. C. L., is well sustained by the authorities:

"The rule that, where a written contract is made as only a part execution of an entire verbal contract, that portion not embodied in the 'paper may be shown by parol applies only where such portion is in itself a distinct, complete contract, not to mere stipulations in regard to and varying the terms of the written contract. What is sought to be shown as a collateral agreement must not in any way conflict with or contradict what is contained in the written contract. Extrinsic evidence is not admissible to show that a contract was partly written and partly oral, if the matter proposed to be made part of the contract by such evidence is inconsistent with the terms of the writing."

A number of decisions cited .by Judge HALL expressly state this qualification (Reid v. Ragland, 156 S. W. 920; Henry v. McCardell, 15 Tex. Civ. App. 497, 40 S. W. 172; Stuart v. Meyer, 196 S. W. 618), and the other cases referred to in this connection permitted the showing of the contemporaneous parol agreements, on the ground that such agreements, which were held to be admissible. did not vary or contradict the terms of the writing in the case. Since all the authori-

ties admit the principle, it would not be profitable to enter into a discussion of the facts of the many cases that apply it. Now .it seems to be well settled that an agreement to renew a note, or that it shall be paid only out of a particular fund, or that the maker thereof is not to be bound thereby, is in contradiction of the terms of a note payable absolutely at a stated time. Hendrick v. Chase Furniture Co., 186 S. W. 277; Crooker v. National Phonograph Co., 135 S. W. 647; Dolson v. De Ganahl, 70 Tex. 620, 8 S. W. 321; Long v. Riley, 139 S. W. 79; Nixon v. First State Bank, 60 Tex. Civ. App. 7, 127 S. W. 882; Daniel on Neg. Inst. §§ 80, 81a; note 43 L. R. A. 449 et seq. No contemporaneous parol agreement is set up in the answer that is not in contradiction of the terms of the note, and the allegations do not, in my opinion, bring the case within this exception to the parol evidence rule.

[5] The question as to conditional delivery of the notes is discussed in two aspects: First, as to the law prior to the adoption of the Negotiable Instruments Act; and, second, in relation to such act. Before the adoption of the act referred to it was the recognized law in this state that parol evidence was admissible to show that manual delivery of a note to the payee was made subject to conditions precedent to the taking effect of the instrument as an obligation, and upon such showing the note in the hands of the original payee was inoperative until the happening of the contingency. This was the rule of the common law and was followed by the Supreme Court of the United States and the courts of most of the states of the Union. According to the reasoning of the authorities, evidence as to such conditions did not vary or contradict the terms of the note itself, but such evidence simply showed that the instrument never became operative as an obligation at all. The following language, used in the opinion, in an English case (Pym v. Campbell, 6 El. & Bl. 370, 373), has been quoted many times with approval by the courts of this country:

"The distinction in point of law is that evidence to vary the terms of an agreement in writing is not admissible, but evidence to show that there is not an agreement at all is admissible."

The question was exhaustively considered by the Supreme Court of the United States in the case of Burk v. Dulaney, 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698, from which decision extensive quotations are made by Judge Key, in his opinion in the case of Hawkins v. Johnson, 181 S. W. 563. An elaborate note on the subject will be found in L. R. A. 1917C, 306–321. The writer of the note states this conclusion on the subject:

"To restate the governing principles: Evidence which shows that the writing was never delivered with the intention that it was to become a binding contract is admissible. But if the writing has been finally delivered as a contract, evidence which contradicts or varies its terms is not admissible."

So, if the allegations of the answer show a delivery of the defendant's note as a part of the contract made between the plaintiff and the defendant, parol evidence that its payment was to be extended or the note renewed from time to time, and paid in a particular way, would be inadmissible; such evidence would vary the obligation evidenced by the writing rather than show that no obligation at all existed by virtue of the note and mortgage. What is the effect of section 16 of the Negotiable Instruments Act as to the admissibility of such evidence? This section and the preceding one deal with the subject of "delivery." Section 16 reads:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only and not for the purpose of transferring the property in the instrument."

I do not think that it was intended by the Legislature to make any material change in the law as it already existed in this state in the matter of a conditional delivery of notes, as declared by such decisions as Burk v. Dulaney and Hawkins v. Johnson, supra. The term "conditional delivery," as applied to the delivery of negotiable instruments, had an established meaning—that is, a delivery on condition precedent ,to the taking effect of the instrument as an obligation in any sense —and there is nothing to show that this was not the meaning in which the term was used in this act.

[6] What is meant by delivery for "a special purpose only," which might be shown in denial of liability on a regularly executed note, is made clear by the addition to the clause "and not for the purpose of transferring the property in the instrument"; an instance of this would be a delivery for the purpose of examination and the like. In my opinion, it was not the purpose of the act to let down the bars to the introduction of parol evidence to vary the terms of the note after it was once delivered as an obligation. I know of no authority that maintains that the adoption of section 16 of this act made any change in the law on this particular subject, except in the cases referred to by Mr. Daniel in section 68a of his work, quoted by Judge HALL, as follows:

"The conflict of authority on the question whether a bill or note can be shown to have

been delivered upon a condition precedent is settled in those states which have adopted the statute [the Negotiable Instruments statute] where the rule is recognized that a person may manually deliver an instrument though it be in the form of commercial paper, to another, on its face containing a binding obligation in præsenti of such person to such other, with a contemporaneous verbal agreement that it shall not take effect until the happening of some specified event, and that the paper as between the parties will have no validity as a binding contract until the condition shall have been satisfied."

A consideration of what precedes this statement will make clear what the author meant by the above language. It was shown in section 68 and the first paragraph of section 68a that some authorities had held that a manual delivery of a note to the payee could not be shown by parol to be on condition precedent to its taking effect; and it was stated in such connection that such holding was against the weight of authority, and it was concluded that "it is now generally held that a note may be delivered to the payee to take effect only upon a condition precedent." This discussion is followed by the second paragraph of section 68a, which constitutes the language first above quoted So, it seems clear that the author did not intend to say that the Negotiable Instruments Law made any change as to the law in those states which had already held that parol evidence might be offered to show delivery of a negotiable instrument upon a condition precedent. Mr. Brannan, on page 62 of his work on the Negotiable Instruments Law, has this to say in reference to said section 16:

"The language of the section that the delivery may be shown to have been conditional or for a special purpose, and not for the purpose of transferring the property in the instrument, is somewhat ambiguous. If the last clause qualifies both a conditional delivery and a delivery for a special purpose, it would seem that where the delivery is conditional, and no property in the instrument passes, we have a case of the first kind and not of the second. Moreover, in any case, the statute not speaking on the question as to the kind of evidence by which delivery may be shown to be conditional, recourse must be had to the common law, where the distinction is made between the two classes of cases, which may be generally described as those in which the condition is a condition precedent to the existence of the contract and those in which it is a condition to liability as an existing obligation."

Most of the authorities cited by Judge HALL are typical cases of true conditional deliveries; that is, the instruments by reason of the nonfulfillment of the condition under which they were manually delivered, never took effect at all, and the decisions were placed on such grounds, though in some cases it might be questioned whether the particular facts brought the case with-

in the rule. The case of Paulson v. Boyd, 137 Wis. 241, 118 N. W. 841, is perhaps more nearly in point in its facts than any of the cases cited. Three of the judges dissented from the holding in that case. The conclusion as to the facts is questioned by Brannan (page 61), and is criticized by the author of the note in L. R. A. 1917C, 312, 313. The question of the decision is not as to the statement of the law, but as to its application to the facts of the case. The court states the law of the case, quoting from Hodge v. Smith, 130 Wis. 326, 110 N. W. 192, as follows:

"It is familiar law, notwithstanding some conflicting authorities, that a person may manually deliver an instrument, though it be in the form of commercial paper, to another, on its face containing a binding obligation in præsenti of such person to such other, with a contemporaneous verbal agreement that it shall not take effect until the happening of some specified event, and that the paper, as between the parties, will have no validity as a binding contract till the condition shall have been satisfied, and that proof of such condition does not violate the rule that a written instrument cannot be varied by a contemporaneous agreement; that such evidence only goes to show that the instrument never had vitality as a contract"—,

and immediately states that—

"It is there also held that this principle is recognized in the Negotiable Instruments Law, * * * by providing that [quoting section 16 of such law]."

The case of Burk v. Dulaney, supra, is also quoted as authority for the conclusion of the court. So that it is apparent that, notwithstanding the Negotiable Instruments Law was then in force in Wisconsin, it was not considered by the court that such law made any change in the law of conditional delivery as it had been announced by the Supreme Court of the United States in Burk v. Dulaney and other authorities following the common law.

[7] So I conclude that these notes were delivered and the condition was only as to the time and manner of their payment, and that parol evidence as to such conditions would not be admissible, and allegations setting up such facts would be subject to demurrer.

It was suggested on oral argument that the effect of the allegations is to allege a partnership or joint undertaking between the plaintiff and defendant, the plaintiff furnishing the cattle, and the defendant their pasturage, care, and keep; that the note was delivered as the liability of the joint undertaking to the plaintiff, and not as an obligation of the defendant, and was executed for plaintiff's accommodation, so that he might secure money for his own purposes while the partnership, or whatever it might be called, was paying out the debt, and that under this view of the allegations the notes deliver-

ed were not a contract between the plaintiff and the defendant at all, and as between them is to be regarded as accommodation paper, so that there was no consideration for the execution of the note as an individual liability of the defendant; and also that the partnership arrangements is such an independent agreement as might be shown and its breach constitute either a failure of consideration or warrant a suit for damages. As I understand it, Chief Justice HUFF is inclined to take this view of the transaction, and places his concurrence in the holding that the allegations of the first three subdivisions of the answer are sufficient on this ground. But, for the reasons already stated, I do not think that the facts alleged in the answer will bear the construction that the notes were not delivered as an obligation. If they were delivered as a part of the contract, then all the other allegations merely go to vary their terms and are conditions of payment and not conditions of effective delivery.

I have not attempted a discussion of the facts of the many cases cited, or that might be cited, on this subject, my purpose being to determine the controlling principles of law from recognized authorities. In addition to the authorities cited, the following may be referred to as being more or less similar in the particular facts on which the decisions were based: Gwinn v. Ford, 85 Wash. 571, 148 Pac. 891; Stevens v. Inch, 98 Kan. 306, 158 Pac. 43; Smith v. McLaughlin, 120 Ark. 366, 179 S. W. 496.

HUFF, C. J. I agree to a reversal of this case on the grounds stated by Judge BOYCE, and also, as against a general exception, I am inclined to think, indulging every reasonable intendment in favor of the allegations, the answer shows no individual obligation or debt owing by appellant to appellee, but that the notes were executed as an accommodation to the joint enterprise and for the joint obligors owing the debt. I concur with Judge BOYCE in his construction of section 16 of the Negotiable Instruments Act. In my judgment, this section does not materially change the rule in this state with reference to delivery in order to constitute an executed contract.